23CA1269 Parental Resp Conc SL 08-29-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1269 Larimer County District Court No. 12DR150 Honorable Joseph D. Findley, Judge In re the Parental Responsibilities Concerning S.L., a Child, and Concerning Susan McClain, Appellee, and Lisa Lipsie, Appellant. ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS Division VII Opinion by JUDGE GOMEZ Kuhn, J., concurs Richman*, J., dissents NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 29, 2024 The Lathrop Law Office, P.C., Jennifer S. Easterday, Fort Collins, Colorado, for Appellee Faegre Drinker Biddle & Reath LLP, Teresa G. Akkara, Denver, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024. 
1 ¶ 1 Lisa Lipsie (mother) appeals the district court’s order denying her motions for modification of parenting time and decision-making responsibility with respect to the child, S.L. Because the district court’s findings are insufficient to establish that the court applied the correct legal framework under Troxel v. Granville, 530 U.S. 57 (2000) (plurality opinion), and In re Parental Responsibilities Concerning B.R.D., 2012 COA 63, in denying her motions, we reverse the order and remand the case with directions to consider mother’s motions under the correct legal framework. I. Background ¶ 2 Mother gave birth to S.L. in 2009. Less than two years later, Larimer County filed a dependency and neglect case with respect to the child, and mother stipulated to a deferred adjudication.
1 Mother and the child’s father later agreed to a stipulation allocating parental responsibilities to Susan McClain, the child’s maternal 1 We take judicial notice of the court records from the earlier dependency and neglect case. See Medina v. People, 2023 CO 46, ¶ 5 n.1 (“A court may take judicial notice of the contents of court records in a related proceeding.” (quoting People v. Sa’ra, 117 P.3d 51, 56 (Colo. App. 2004))). 
2 grandmother (grandmother). That stipulation was certified into a domestic relations case and became an order of the court. ¶ 3 As relevant here, the stipulation provided that (1) grandmother was “allocated sole parental responsibilities” for S.L.; (2) grandmother was the “primary physical and legal custodian” of S.L.; and (3) any parenting time for mother or father was to be “determined at the sole discretion of [grandmother],” with grandmother expressly having the right to deny parenting time, to require that parenting time be supervised, or to require drug screening as a condition of exercising parenting time. It also provided that any modification of these terms would be determined by the domestic relations court. ¶ 4 Over a decade later, mother, who appeared pro se, filed the underlying motions to modify parenting time and decision-making responsibility. Through her motions, she sought to have more parenting time with and more decision-making responsibility for the child. At a hearing on the motions, the district court took testimony from mother, grandmother, and several other witnesses, and it received into evidence a report from a court-appointed child and family investigator (CFI), who disagreed with mother’s 
3 requested modifications but recommended that the court impose a set parenting time schedule. The court also conducted an in camera interview of the child. ¶ 5 The court later issued an order denying both motions. ¶ 6 As to the request to modify parenting time, the court made findings for nine of the eleven best-interests factors listed in section 14-10-124(1.5)(a), C.R.S. 2024. It then concluded, The [c]ourt strongly considered the wishes of the [m]inor [c]hild and the recommendations of the CFI. The [c]ourt is sympathetic to the recommendation for a stricter parenting time schedule with less deference to [g]randmother as recommended by the CFI to remove communication from [grandmother] and [mother] regarding coordination of parenting time. However, the evidence provided left the [c]ourt uncertain regarding [m]other’s living situation, the presence of people in her life who lead the [m]inor [c]hild to feel unsafe, and [m]other’s continuing ability to support a stable environment that would support regularly-scheduled parenting time. When the [c]ourt considered all the evidence, together with the wishes of the [m]inor [c]hild, the [c]ourt fears for the long-term best interest of the [m]inor [c]hild if a schedule without deference to the [m]inor [c]hild and [g]randmother were imposed even if certain safety measures were put into place. 
4 ¶ 7 As to the request to modify decision-making responsibility, the court reasoned, The [c]ourt does not find that matters have sufficiently changed to justify a change in decision-making authority pursuant to [section 14-10-131(2), C.R.S. 2024]. Mother made allegations as to changes based on family controversies and grievances [she] has collected regarding [g]randmother to indicate such a change in circumstances. However, the [c]ourt was persuaded by the various witnesses who testified to [grandmother’s] continued ability to make sound decisions and her maintenance of a safe environment that has led to prosperity for the [m]inor [c]hild in school and her overall security. Nothing indicated to the [c]ourt a change in information or circumstances that would justify a change to decision-making authority. ¶ 8 Mother contends that the court erred in three ways: (1) by failing to apply the legal framework set forth in Troxel and B.R.D.; (2) by delegating to grandmother the right to make parenting time decisions; and (3) by continuing a parenting time restriction without making the statutorily required endangerment finding or considering less drastic alternatives. We agree with the first contention, reverse and remand on that basis, and decline to consider the other two contentions. 
5 II. Discussion A. Standard of Review ¶ 9 Allocating parental responsibilities is a matter within the sound discretion of the district court, and when there is record support for the district court’s findings, its resolution of conflicting evidence is binding on review. B.R.D., ¶ 15. However, whether the court applied the correct legal standard presents a question of law that we review de novo. Id. B. Legal Standards ¶ 10 The United States Supreme Court has long recognized parents’ fundamental due process right to make decisions concerning the care, custody, and control of their children. Troxel, 530 U.S. at 66 (citing cases). The plurality in Troxel also recognized a “presumption that fit parents act in the best interests of their children.” Id. at 68. Thus, the plurality concluded, “so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent’s children.” Id. at 68-69. And where a parent’s decision becomes 
6 subject to judicial review, a court “must accord at least some special weight to the parent’s own determination.” Id. at 70. ¶ 11 This Troxel presumption applies even if a parent has voluntarily delegated the day-to-day care, custody, and control of their children to a nonparent. In re D.I.S., 249 P.3d 775, 779 (Colo. 2011). In such instances, unless the parties’ agreement expressly provides otherwise, the parent may seek to terminate the arrangement and is entitled to a presumption that their decision to reassert care, custody, and control is in the best interests of the children. Id. at 783-84. The nonparent has the burden of proving otherwise by a preponderance of the evidence. Id. at 786. ¶ 12 In B.R.D., a division of this court applied these standards to circumstances very similar to those in this case. There, a parent sought to modify orders he had previously stipulated to, which gave nonparents majority parenting time and sole decision-making responsibility over his child. B.R.D., ¶¶ 6, 8. Applying Troxel, D.I.S., and other cases, the division outlined four critical points to a court’s analysis in such circumstances. B.R.D., ¶¶ 31-37. ¶ 13 First, rather than presuming that the existing order remains in effect, the court must give “special weight” to a parent’s request to 
7 modify that order. Id. at ¶ 32. This means there is a presumption in favor of modifying the orders at the parent’s request. Id. ¶ 14 Second, the court must give a nonparent an opportunity to present evidence (1) to rebut this presumption by showing that the proposed modification is not in the child’s best interests and that the existing order doesn’t endanger the child and (2) to prove that the existing order is in the child’s best interests. Id. at ¶ 33. To satisfy these two evidentiary obligations in the context of changes to parenting time and decision-making responsibility, the nonparent would need to show that • no new facts that have arisen or become known since the existing order show that a change in the nonparent’s or the child’s circumstances would make the parent’s proposed modification necessary to serve the child’s best interests; • the child’s present environment doesn’t endanger the child’s physical health or impair the child’s emotional development, and any harm likely to be caused by the parent’s proposed modification would not be outweighed by its advantages; and 
8 • the existing order gives paramount consideration to the child’s physical, mental, and emotional conditions and needs by applying the factors in section 14-10-124(1.5). B.R.D., ¶ 34. ¶ 15 Third, the applicable burden of proof on the nonparent is the preponderance of the evidence standard. Id. at ¶¶ 35-36. ¶ 16 And fourth, if the court denies the parent’s request, it must make findings of fact identifying the special factors on which it relies. Id. at ¶ 37. This includes the factors listed in section 14-10-
124(1.5) (for allocation of parenting time and decision-making responsibility); section 14-10-129(2), C.R.S. 2024 (for modification of parenting time); and section 14-10-131(2) (for modification of decision-making responsibility). B.R.D., ¶ 37. C. Preservation ¶ 17 We disagree with grandmother’s assertion that mother didn’t preserve her argument relating to the applicable legal framework. See Gestner v. Gestner, 2024 COA 55, ¶ 18. ¶ 18 We don’t require “talismanic language” to preserve an issue for appeal. Madalena v. Zurich Am. Ins. Co., 2023 COA 32, ¶ 50 (quoting Owens v. Dominguez, 2017 COA 53, ¶ 21). Instead, “[i]f a 
9 party ‘presented to the trial court the sum and substance of the argument it . . . makes on appeal, we consider that argument properly preserved for appellate review.’” Id. (quoting Berra v. Springer & Steinberg, P.C., 251 P.3d 567, 570 (Colo. App. 2010)). We also liberally interpret the pleadings of a pro se party. Adams Cnty. Hous. Auth. v. Panzlau, 2022 COA 148, ¶ 8. ¶ 19 Here, mother, who appeared pro se, presented the sum and substance of her argument to the district court. In the trial management certificate, she cited the same legal standards from B.R.D. that she relies on in this appeal, including that “special weight” must be given to a parent’s motion to modify parental responsibilities where a nonparent has primary residential custody and sole decision-making responsibility and that, in such cases, “there is a presumption in favor of modifying the order at the parent’s request.” Then, at the hearing, she argued that “never have I been deemed unfit as a parent,” “so you would presume that I’m acting in [the child’s] best interests.” And in her written closing argument, she cited Troxel in arguing that grandmother “did not provide evidence that I am an unfit parent, so the presumption is 
10 that I am acting in my child’s best interest.” This was sufficient to preserve the issue. D. Analysis ¶ 20 As an initial matter, we note that the earlier dependency and neglect proceedings did not alter the presumption that mother is a fit parent who is acting in the child’s best interests. Although an adjudication may overcome that presumption, a deferred adjudication generally will not. See People in Interest of N.G., 2012 COA 131, ¶ 36. And while grandmother cites evidence regarding the dependency and neglect case, mother’s criminal history, and mother’s history of drug use, the juvenile court in this case never expressly found that mother was unfit. In the absence of any finding that mother wasn’t a fit parent, she is still entitled to the presumption that she is acting in the child’s best interests. See Troxel, 530 U.S. at 68. ¶ 21 Thus, under Troxel and B.R.D., the district court needed to give special weight to mother’s requests to modify the existing order and needed to begin its analysis by applying a presumption in favor of her modification requests. 
11 ¶ 22 Grandmother argues that, while the district court didn’t cite the Troxel or B.R.D. standards in its order, it applied those standards and implicitly found that she had overcome the presumption in favor of mother’s modification requests. While the court may not be required to expressly cite those standards, its ruling must demonstrate that it applied the correct legal standards, and we’re not convinced that its ruling sufficiently demonstrates that it did. Cf. In re Marriage of Rozzi, 190 P.3d 815, 822 (Colo. App. 2008) (“A trial court’s order must contain findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it rendered its decision.”). ¶ 23 It is true, as grandmother points out, that the district court weighed at least some of the relevant considerations, including making findings on the parenting time factors listed in section 14-10-124(1.5)(a). But the court’s findings don’t demonstrate that, in doing so, the court applied the presumption in mother’s favor and required grandmother to rebut that presumption. 
12 ¶ 24 The district court recited the ordinary statutory provisions in sections 14-10-124, 14-10-129, and 14-10-131. Yet those provisions don’t establish any presumption in favor of a parent’s request to modify parental responsibilities — and in some instances they establish a presumption in favor of the status quo, which in this case favors grandmother. See, e.g., §§ 14-10-129(2), 14-10-
131(2). The Troxel presumption, however, requires additional considerations to protect a parent’s due process rights. See D.I.S., 249 P.3d at 783-86; B.R.D., ¶ 30. So if the district court mechanically applied only the statutory provisions it cited in its order, then it misapplied the law. And it’s unclear from the court’s order whether it did so. ¶ 25 The district court also expressed that it was “uncertain” about mother’s living situation, the presence of people in mother’s life who lead the child to feel unsafe, and mother’s ability to establish a stable environment to support regularly scheduled parenting time. But if the court were truly applying a presumption in mother’s favor and requiring grandmother to rebut that presumption, then any uncertainty would be resolved in mother’s favor — not grandmother’s. But the court relied on its uncertainty to deny 
13 mother’s motions, suggesting that it may instead have resolved the uncertainties in grandmother’s favor. ¶ 26 Because the court’s findings and conclusions are insufficient to show that the court applied the correct legal framework to its decisions on mother’s motions to modify parenting time and decision-making responsibility, we reverse the order denying those motions and remand the case with instructions to consider them under the legal standards set forth in Troxel and B.R.D. See B.R.D., ¶ 43 (reversing a district court order denying a parent’s requests for modification of parenting time and decision-making responsibility and remanding the case for new factual findings under the standards described in the opinion). ¶ 27 On remand, the district court should apply these standards and determine whether a modification of parenting time and decision-making responsibility would be in the child’s best interests. In doing so, the court must (1) begin with a presumption favoring mother’s requests; (2) determine whether grandmother rebutted this presumption by showing that the proposed modification is not in the child’s best interests, that the existing order on parenting time and allocation of parental responsibilities 
14 doesn’t endanger the child, and that the existing order is in the child’s best interests; and (3) place the ultimate burden on grandmother to establish this burden by a preponderance of the evidence. See id. at ¶¶ 32-36. If, after applying this test, the court denies mother’s requests, it must make factual findings identifying those special factors on which it relies. See id. at ¶ 37. ¶ 28 We recognize, however, that the child’s circumstances may have changed since the district court entered its order in this case, and that the court must determine the child’s best interests based on her circumstances as of the time of remand proceedings. See In re Parental Responsibilities Concerning M.W., 2012 COA 162, ¶ 27. Thus, although the court may rely on the existing record in determining the child’s best interests, it must also provide the parties the opportunity to present additional evidence concerning her current circumstances. See id. III. Disposition ¶ 29 The order is reversed, and the case is remanded for further proceedings consistent with this opinion. JUDGE KUHN concurs. JUDGE RICHMAN dissents. 
15 JUDGE RICHMAN, dissenting. ¶ 30 In my opinion, this case presents the following issue: Whether an order denying a parent’s motion to modify parenting time and decision-making in favor of a custodial nonparent may satisfy the presumption in Troxel v. Granville, 530 U.S. 57, 69 (2000) (plurality opinion), without expressly citing Troxel, when it meets the framework set forth in In re Parental Responsibilities Concerning B.R.D., 2012 COA 63. I conclude that it can. ¶ 31 On June 7, 2023, following a full-day hearing, the district court entered a detailed seven-page order denying the motions of Lisa Lipsie (mother) for modification of parenting time and decision-
making authority with respect to the child, S.L. I conclude the district court did not abuse its discretion in denying the motions, nor did it fail to properly apply the Troxel presumption or relevant statutory provisions as required by the controlling decisions of our court. Therefore, I dissent and would affirm the judgment. I. Background ¶ 32 As the majority recounts above, in 2011, Larimer County opened a dependency and neglect case with respect to the child, and on September 15, 2011, mother signed a stipulation that 
16 allocated sole parental responsibilities to Susan McClain, the child’s maternal grandmother, and dictated that all parenting time shall be as determined at the sole discretion of Ms. McClain, including the ability to require that visits be supervised and that any party submit a urinalysis screening. ¶ 33 In June 2022, mother filed her pro se motion to modify decision-making authority, and in July 2022, she filed her pro se motion to modify parenting time. The motion to modify decision-
making authority requested that custody be returned to mother, and her motion to modify parenting time requested that the child be “move[d] in with mother” and that Ms. McClain be allowed two weekends of visits per month. II. The District Court’s Rulings ¶ 34 On May 15, 2023, the district court held a hearing on the motions, at which mother appeared pro se and Ms. McClain  Mother acknowledges that during this period she was “struggling to overcome drug addiction.” The record shows that mother pleaded guilty in 2012 to felony assault and burglary, was sentenced to incarceration, and, in 2016, was charged with escape and returned to prison. Ms. McClain was concerned about acquaintances of mother who had criminal records being around S.L. 
17 appeared with counsel. The court took testimony from both parties and received into evidence a report from the child and family investigator (CFI), which was filed on January 17, 2023. The court also interviewed the child, who by then was over thirteen years old, in camera without counsel or the parties present. ¶ 35 In a thorough written order entered June 7, 2023, the district court denied both motions. The court summarized mother’s position as follows: Mother requests no specific schedule in the Joint Trial Management Certificate filed on April 19, 2023. Mother argues that [Ms. McClain] has been manipulative and is attempting to alienate the Minor Child from Mother. As to decision-making responsibility Mother argues that [Ms. McClain] discourages a relationship with Mother and will not communicate. ¶ 36 The court summarized Ms. McClain’s position as follows: [Ms. McClain] requests that if a parenting schedule is awarded to Mother that it is no more than alternating weekends from noon on Saturday to 4:00 P.M. Sunday. Further, [Ms. McClain] requests that no other adult is present during Mother’s parenting time and if someone is present that the Minor Child be returned to [Ms. McClain] immediately. [Ms. McClain] states that Mother is unable to demonstrate that she is capable [of] making appropriate decisions for the Minor Child. 
18 Further, she argues that there is no evidence to show that modification of decision-making authority is appropriate. ¶ 37 In denying the requested modification of decision-making, the court found and concluded the following: The Court does not find that matters have sufficiently changed to justify a change in decision making authority pursuant to [section 14-10-131(2), C.R.S. 2024]. Mother made allegations as to changes based on family controversies and grievances Respondent has collected regarding [Ms. McClain] to indicate such a change in circumstances. However, the Court was persuaded by the various witnesses who testified to Petitioner’s continued ability to make sound decisions and her maintenance of a safe environment that has led to prosperity for the Minor Child in school and her overall security. Nothing indicated to the Court a change in information or circumstances that would justify a change to decision-making authority. ¶ 38 In denying the motion to modify parenting time, the court made findings with respect to nine of the eleven factors enumerated in section 14-10-124(1.5)(a), C.R.S. 2024. It also considered evidence of the child’s best interests, and it determined that the extreme nature of mother’s allegations about Ms. McClain were without persuasive evidence and of “no relevant concern other than to serve” mother’s grievances. 
19 ¶ 39 The court concluded its order stating, The Court strongly considered the wishes of the Minor Child and the recommendations of the CFI. The Court is sympathetic to the recommendation for a stricter parenting time schedule with less deference to [Ms. McClain] as recommended by the CFI to remove communication from the Petitioner and Respondent regarding coordination of parenting time. However, the evidence provided left the Court uncertain regarding Mother’s living situation, the presence of people in her life who lead the Minor Child to feel unsafe, and Mother’s continuing ability to support a stable environment that would support regularly-scheduled parenting time. When the Court considered all the evidence, together with the wishes of the Minor Child, the Court fears for the long-term best interest of the Minor Child if a schedule without deference to the Minor Child and [Ms. McClain] were imposed even if certain safety measures were put into place. III. Issues on Appeal ¶ 40 On appeal, mother first argues the district court’s order did not properly consider the presumption accorded to a fit parent under Troxel and B.R.D. She also contends that the court erred in “conditioning” mother’s parenting time on Ms. McClain’s consent, because district courts may not delegate decisions regarding parenting time to a third party, relying on In re Marriage of Dauwe, 
20 148 P.3d 282 (Colo. App. 2006). She further argues the court did not make the requisite “endangerment” findings before restricting parenting time or consider less detrimental alternatives to restricting parenting time, relying on In re Marriage of Hatton, 160 P.3d 326, 331 (Colo. App. 2007). I disagree with mother’s contentions and address each argument in turn. IV. Standard of Review ¶ 41 Allocating parental responsibilities is a matter within the sound discretion of the district court, and when there is record support for the district court’s findings, its resolution of conflicting evidence is binding on review. B.R.D., ¶ 15. However, whether a court has applied the correct legal standard presents a question of law that we review de novo. Id. V. The Troxel Presumption and B.R.D. ¶ 42 Mother contends the court did not afford her the presumption established under Troxel and recognized in B.R.D.: that a fit parent is presumed to act in the best interest of her child and her decision concerning her child must be accorded special weight. Troxel, 530 U.S. at 69-70; B.R.D., ¶ 24. 
21 ¶ 43 Ms. McClain argues on appeal that mother did not preserve this argument, and even if she did, she was not shown to be a fit mother deserving this presumption. ¶ 44 Mother represented herself at the hearing on the modification motions. While I acknowledge that she did not expressly argue to the court that she was entitled to a presumption under these cases, she did argue that she was the child’s mother, and “you would presume that I’m acting in her best interests.” Moreover, in the trial management certificate she argued that special weight must be given to a parent’s motion to modify parental responsibilities and specifically cited B.R.D. I agree with the majority that mother sufficiently preserved her argument as to the applicability of the Troxel presumption. ¶ 45 Ms. McClain also argues that mother failed to show her entitlement to the presumption because the record shows that she was not a “fit” mother. She argues that mother’s criminal record and the fact that this case started as a dependency and neglect case demonstrate mother’s lack of fitness. However, as Ms. McClain acknowledges, the district court did not make any findings as to whether mother was a fit parent, and it does not appear that it was 
22 argued that she was unfit. I therefore cannot conclude, in the absence of factual findings, that the Troxel presumption should be denied here because mother was not a “fit” parent. ¶ 46 Finally, I consider mother’s argument and the majority’s position that the district court failed to afford her the Troxel presumption. I conclude that under the nuanced analysis of the Troxel presumption, as set forth in B.R.D., the district court properly applied the presumption and the law. VI. The Framework under B.R.D. ¶ 47 In B.R.D., ¶ 6, the opposing parties were a custodial couple who, like Ms. McClain here, obtained sole parental and decision-
making responsibility of the child pursuant to a stipulation with the birth parents. The mother and father, two years after entering into the stipulation, sought to modify it, asserting changed circumstances, like mother here. Id. at ¶ 8. The district court denied the mother and father’s request but directed specific parenting time for them. Id. at ¶ 12. The father appealed, asserting that the district court did not properly apply the Troxel presumption. Id. at ¶ 14. 
23 ¶ 48 A division of our court concluded that the district court had misapplied the presumption. Id. This was primarily because the district court had relied on In re Parental Responsibilities Concerning M.J.K., 200 P.3d 1106 (Colo. App. 2008), a case whose holding was rejected by the supreme court in In re D.I.S., 249 P.3d 775, 781 (Colo. 2011), a case decided after the district court’s ruling in the case. B.R.D., ¶ 14. The B.R.D. opinion, after discussing the modification statutes, described several general frameworks for applying the Troxel presumption to conflicts between a parent and a nonparent over custody of a child, one of which applies to the facts of this case: A fit parent who has relinquished custody of a child and agreed to a court order placing the child with a non-parent guardian is nonetheless entitled to the presumption that his or her decisions about the child’s custody are in the child’s best interests. Thus, unless the guardianship order contains express limitations, a parent may move to terminate the guardianship and reclaim custody of the child. The guardian bears the burden of proving, by a preponderance of the evidence, that terminating the guardianship is not in the child’s best interests. Id. at ¶ 25 (citing D.I.S., 249 P.3d at 779). 
24 ¶ 49 B.R.D., ¶¶ 32-37, then outlined how a district court should apply the presumption and the statutory requirements involved in motions to modify pre-existing decision-making and motions to modify parenting time orders between a parent and a nonparent. ¶ 50 First, rather than presuming that the existing order remains in effect, the court must give “special weight” to the parent’s request to modify them. Id. at ¶ 32. This means that there is a presumption in favor of modifying the orders at the parent’s request. Id. ¶ 51 Second, the court must give the custodial nonparent an opportunity (1) to rebut this presumption by showing that the proposed modification is not in the child’s best interests and that the present allocation of parental responsibilities does not endanger her and (2) to prove that the present allocation of parental responsibilities is in the child’s best interests. Id. at ¶ 33. The parent seeking modification is entitled to present evidence in support of the proposed modification. Id. ¶ 52 Under the circumstances present here, this means several things. First, in order to rebut the presumption in favor of mother’s request to modify parenting time and decision-making responsibility in the existing order and establish that the proposed modification is 
25 not in the child’s best interests, Ms. McClain must show that (1) there are no facts that have arisen since, or were unknown when the existing order was entered, that show a change has occurred in Ms. McClain’s circumstances or the child’s circumstances that would make mother’s proposed modification “necessary to serve the best interests of the child,” §§ 14-10-129(2), -131(2), C.R.S. 2024; and (2) the child’s present environment does not endanger her physical health or impair her emotional development, and any harm likely to be caused by mother’s proposed modification would not be outweighed by the advantages of the proposed modification, see §§ 14-10-129(2)(d), -131(2)(c). ¶ 53 Second, in order to show that the present allocation of parental responsibilities is in the child’s best interests, Ms. McClain must show that the existing allocation gives “paramount consideration to the [child’s] physical, mental, and emotional conditions and needs” by applying the factors found in section 14-
10-124(1.5). B.R.D., ¶ 34 (quoting § 14-10-124(1.5), C.R.S. 2012). And, under the circumstances in this case, Ms. McClain can satisfy her burden by a preponderance of the evidence because mother initially consented to an order vesting Ms. McClain with sole 
26 decision-making authority and giving her primary residential custody. Id. at ¶¶ 35-36. To determine whether there is a showing by a preponderance of evidence, the district court takes into account all the evidence presented, whether offered by Ms. McClain or mother. ¶ 54 Finally, in denying mother’s request and continuing with the present allocation of parental responsibilities to Ms. McClain, the court must make findings of fact identifying the special factors on which it relies. Id. at ¶ 37. These special factors are found in section 14-10-124(1.5) (stating factors for allocation of parenting time and decision-making responsibility), section 14-10-129(2) (stating factors for modification of parenting time), and section 14-
10-131(2) (stating factors for modification of decision-making responsibility). Id. VII. The District Court Properly Applied the B.R.D. Framework ¶ 55 I acknowledge that the district court decision does not expressly cite to Troxel or B.R.D., or state that mother’s preference was being afforded the presumption of a fit parent. But, as noted, mother had not expressly argued for such findings. Nonetheless, 
27 my review of the analysis undertaken by the district court shows that it complied with the B.R.D. framework. ¶ 56 What Troxel sets forth is a rebuttable presumption that the parent is presumed to be acting in the best interest of the child, and therefore the parent’s decisions are to be accorded special weight. B.R.D., ¶ 24. But the rebuttable presumption is just that — rebuttable. And if the evidence as to the child’s best interest overcomes the presumption by a preponderance, then special weight is not afforded to the parent’s choice. Id. at ¶ 25. ¶ 57 Although the court below did not state that there was “a presumption in favor of modifying the orders at mother’s request,” it did require and find evidence to rebut the presumption by showing that the proposed modification was not in the child’s best interests and the present allocation did not endanger the child. ¶ 58 The presumption was rebutted by the evidence showing that there were no facts that had arisen since the existing order was entered to show that a change had occurred in Ms. McClain’s or the child’s circumstances that made the proposed modification necessary. See id. at ¶ 34. In this regard the district court stated: “The Court does not find that matters have sufficiently changed to 
28 justify a change in decision making authority pursuant to C.R.S. 14-10-131(2),” and “[n]othing indicated to the Court a change in information or circumstances that would justify a change to decision-making authority.” ¶ 59 The report of the CFI, on which the district court relied, also stated that “the current parenting plan . . . does not warrant a modification of allocation of decision-making responsibilities.” And it concluded that “there is no legal justification of a modification of decision-making.” To me, this finding rebuts the presumption in mother’s favor. ¶ 60 In accordance with the requirement in B.R.D., that the nonparent must show that the proposed modification is not “necessary to serve the child’s best interest,” the district court found that the best interests of the child were served by the current allocation: When the Court considered all the evidence, together with the wishes of the Minor Child, the Court fears for the long-term best interest of the Minor Child if a schedule without deference to the Minor Child and [Ms. McClain] were imposed even if certain safety measures were put into place. 
29 ¶ 61 In addition, the CFI report opined that mother’s requested modification was not in the child’s best interests. I read the court’s finding and conclusion as satisfying B.R.D.’s requirement regarding the current parenting plan and rebutting any presumption that a change in parenting is in the best interest of this child. ¶ 62 The district court also found that B.R.D.’s requirement that the child’s present environment does not endanger her physical health or impair her emotional development was met: [T]he Court was persuaded by the various witnesses who testified to [Ms. McClain’s] continued ability to make sound decisions and her maintenance of a safe environment that has led to prosperity for the Minor Child in school and her overall security. ¶ 63 In addition, the CFI report opined that Ms. McClain’s home and interactions with the child were safe for the child. This again rebuts any presumption in favor of changing decision-making authority under the applicable statute. ¶ 64 With respect to the requirement of B.R.D., ¶ 34, to show that the present allocation of parental responsibilities is in the child’s best interest, the nonparent must show that the existing allocation gives paramount consideration to the child’s physical, mental, and 
30 emotional conditions, in accordance with section 14-10-124(1.5). I note that the district court expressly addressed nine of the eleven factors listed in the statute. ¶ 65 The court observed that based on an in camera interview with the child, she clearly expressed her wishes to maintain her stable living situation and control over her time with mother. The court gave “great weight” to her “wishes [as] subject to her best interests.” ¶ 66 The court also observed that the child has grown accustomed to limited parenting time with mother, and to time with mother only as the child wished to participate. The court concluded that testimony from the parties and their witnesses “established that events in the past have contributed to the Minor Child’s sense of anxiety with her time at the home of the Mother.” ¶ 67 The court also found no physical ailments that impacted parenting time. And the court stated that given the testimony provided, especially the in camera interview with the child, it found no indication that Ms. McClain “has fostered any improper influence upon the child’s determination not to request time with Mother in recent months.” 
31 ¶ 68 The court stated that it considered the evidence of the child’s best interests, and it considered the extreme nature of mother’s allegations about Ms. McClain without persuasive evidence to be of no relevant concern other than to serve mother’s grievances. ¶ 69 Finally, the district court stated that it had “strongly considered the wishes of the Minor Child and the recommendations of the CFI.” As noted, the child strongly wished to continue the current arrangement with Ms. McClain, she did not want to be forced to spend time with mother, and the CFI agreed that modifying the parenting time, as requested by mother, was not in the child’s best interest and there was no justification for a modification of decision-making. ¶ 70 I emphasize that the child here was over thirteen years of age, sufficiently mature to express reasoned and independent preferences, when she expressed her views to the court. Unlike the situations in the B.R.D. and D.I.S. cases, where the subject children  When the court evaluates the best interests of the child, it is required to consider the wishes of the child. To ascertain the best interests of the child, the court may interview the child concerning the child’s wishes. In re Marriage of Hartley, 886 P.2d 665, 672 (Colo. 1994). 
32 were at most four or six years old and did not testify, here S.L. expressed strongly held views to the court about her custody and parenting arrangements. As the district court said, it placed “great weight” on S.L.’s preferences. Given her age and experience, those preferences were entitled to weight, and those preferences support the conclusion that any presumption in favor of the mother was overcome. ¶ 71 To support its inference that the district court did not afford mother the Troxel presumption, the majority refers to a statement by the district court that it was “uncertain” about mother’s living situation. Supra ¶ 25. I do not read that remark as an evidentiary uncertainty about mother’s lifestyle; rather, I read it as the court saying it was doubtful that mother’s living arrangements were suitable to the child residing with her. ¶ 72 The majority also states that while the district court may not be required to expressly cite to the Troxel or B.R.D. standards, its ruling must demonstrate that it applied those standards. Supra ¶ 22. I agree that a talismanic reference to Troxel or B.R.D. is 
33 unnecessary so long as the district court follows the nuanced framework set forth in B.R.D. ¶ 73 On the basis of this record, I conclude that the district complied with the requirements of B.R.D. insofar as mother was entitled to a parental presumption and that presumption was overcome by the evidence before the court. I further conclude that the district court did not abuse its discretion in denying mother’s motions to modify decision-making authority and parenting time. VIII. The Parenting Plan Does not Improperly Delegate Authority ¶ 74 Mother contends that by continuing the parenting plan contained in the stipulation, the district court improperly delegated to Ms. McClain the authority to determine parenting time. ¶ 75 I first note that the district court did not enter a parenting time order in response to mother’s motions; it merely continued the parenting time arrangement put in place some ten years earlier by mother’s stipulation. I do not read the current order denying a modification to the parenting time plan to amount to a delegation.  In re Parental Responsibilities of Reese, 227 P.3d 900, 903 (Colo. App. 2010), expressly states that the court is not required to “explicitly state that it accorded [the parent] the Troxel presumption” provided it applies the appropriate standard of proof. 
34 ¶ 76 Mother nonetheless argues that Dauwe precluded this type of delegation. ¶ 77 Dauwe concluded that the district court’s order, delegating parenting time decisions to a parenting coordinator, contradicted the provisions of section 14-10-128.1(3), C.R.S. 2024, which does not authorize a parenting coordinator to make parenting time decisions. 148 P.3d at 285. Of course, in this case, there is no issue of delegation to a parenting coordinator. ¶ 78 Other cases have concluded that the delegation of parenting time decisions to a noncustodial third party under the facts of those cases is also improper. In Interest of D.R.V-A., 976 P.2d 881 (Colo. App. 1999) (holding it was error for the district court to delegate decisions regarding parenting time to guardian ad litem); In re Marriage of McNamara, 962 P.2d 330 (Colo. App. 1998) (same); In re Marriage of Elmer, 936 P.2d 617 (Colo. App. 1997) (holding it was error for the district court to delegate to psychiatrist authority to determine whether to permit overnight visitation). This case does not involve any of those factual situations. ¶ 79 The only case I have found that addresses whether delegation of parenting time decisions to a custodial party is improper is 
35 Hatton. There, the division concluded that the district court’s delegation of parenting time decisions to the father was improper. Hatton, 160 P.3d at 334-35. But the facts of that case reflected an extreme situation. ¶ 80 First, the district court had ruled that the mother could not have any contact whatsoever with the children in any form, “unless she has signed, written permission from [the father] that is specific with regard to the child or children and date, time and place.” Id. at 334. The division stated the district court could not “completely deny” the mother’s parenting time without considering the least detrimental alternative under the best interests standard. Id. at 333. And the division concluded that the district court had denied the mother any parenting time and any contact whatsoever with the children without expressly considering the least detrimental alternative to ensure the children’s development. Id. ¶ 81 The situation in our case significantly differs from that in Hatton. First, the stipulation is not an order of the court foisted upon mother, but rather an agreement she made when she transferred custody to Ms. McClain. Second, the stipulation does not direct a complete denial of parental visitation. It provides that 
36 Ms. McClain has sole discretion as to when visitation may occur and who may participate. It provides that Ms. McClain shall decide how holidays shall be allocated, but it does not provide that she may deny all holiday visits. Third, and most importantly, over the years that the stipulation has been in effect, mother has had ample visitation with the child as noted in the CFI report: mother and child enjoyed weekends together by agreement of the parties until spring 2022 when mother and Ms. McClain disagreed about several issues. That prompted the filing of the motions in this case, but the CFI notes that even after that the child had spent time with mother, although less frequently. And the district court encouraged a resumption of the prior parenting time exercised, subject to the wishes of the child. ¶ 82 Because the facts of this case are so different from Hatton, I do not read the parenting plan contained in the stipulation as amounting to an improper delegation of authority. IX. Findings on Endangerment ¶ 83 Mother also contends the district court’s order fails because it does not contain the findings regarding endangerment required under section 14-10-129(1)(b) and (2)(d). 
37 ¶ 84 Section 14-10-129(1)(b) provides that parenting time may not be restricted absent a finding that the parenting time “would endanger the child’s physical health or significantly impair the child’s emotional development.” I do not view the court’s order denying a modification to the parenting time arrangement contained in the longstanding stipulation to amount to a “restriction” on parenting time. Again, the court’s order merely denied a modification to that plan. And because I do not agree that the district court restricted mother’s parenting time, there was no restriction, and the court was not required to consider or address least detrimental alternatives. See Hatton, 160 P.3d at 333 (holding parenting time may not be “completely den[ied]” without expressly considering whether doing so is the least detrimental alternative). ¶ 85 Section 14-10-129(2)(d) provides that the court shall retain the parenting time schedule unless “[t]he child’s present environment endangers the child’s physical health or significantly impairs the child’s emotional development.” For the reasons discussed at length above, I conclude that the district court’s order found a lack of endangerment in the child’s present environment so that no change in the current parenting arrangement was required. 
38 ¶ 86 I would affirm the district court’s order in all respects.