### In re the MARRIAGE OF Janet Lee DAUWE, n/k/a Janet Lee Sellers, Appellee,

### and

### Daniel W. Dauwe, Appellant.

### No. 04CA2379.

Colorado Court of Appeals,
Div. IV.

June 1, 2006.

As Modified on Denial of Rehearing
Sept. 21, 2006.

Kane, Donley & Johnson, P.C., Yolanda M. Fennick, Colorado Springs, Colorado, for Appellee.

Daniel W. Dauwe, Pro Se.

CARPARELLI, J.

Daniel W. Dauwe (husband) appeals from postdissolution orders. We affirm the June 15, 2005 order denying release of the court appointed special advocate's files; affirm the November 2, 2004 order granting equal parenting time and decision-making, with the exception of paragraph 13 concerning the parenting coordinator's powers, which is reversed; and remand with directions.

When husband and Janet Lee Sellers (wife) dissolved their marriage, the court ordered joint decision-making, but designated wife to be the primary residential parent of their two children. Husband had parenting time every other weekend and one day during the week.

Seven years after the entry of permanent orders, husband moved to modify parental responsibilities. He sought equal parenting time, but wanted to leave intact the joint allocation of decision-making responsibility. He also sought to enjoin wife from obtaining counseling or therapy for the children without prior notice to, and consent by, him.

After a hearing, on November 2, 2004 the court implemented a schedule for equal parenting time and gave the same parental responsibilities to each parent, except it gave wife the authority to enroll the children in family therapy. The court also ordered the appointment of a parenting coordinator and declined to terminate the appointment of the court appointed special advocate. Husband appealed.

Three months after the hearing at which the court granted equal parenting time, husband requested copies of the underlying data and reports in the special advocate's file pursuant to Chief Justice Directive 04–08 § III(C)(12) (Standard 12). The special advocate sought clarification from the court as to whether she should release her file. After a hearing, on June 15, 2005 the court denied husband's request, finding release of the records would endanger the children's welfare. Husband appealed the order. The two appeals have been consolidated.

I.

Husband asserts the court erred when it did not terminate the appointment of the special advocate. Specifically, he asserts that Chief Justice Directive 04–08 §§ III(C)(14) and IV(D) require the court to terminate the appointment after the court ruled on his motion for parenting time. We conclude that the issue is moot. An issue is moot when a judgment, if rendered, would have no practical legal effect on the existing controversy. An appellate court will not render an opinion on the merits of an issue when it becomes moot because of subsequent events. *In re Marriage of Salby*, 126 P.3d 291 (Colo.App.2005); *see Simpson v. Bijou Irrigation Co.*, 69 P.3d 50 (Colo.2003)(however, an appellate court may consider a moot issue when the matter involves a question of great public importance, or the controversy is capable of repetition, yet evades review).

Here, husband does not dispute that the court granted the special advocate's request to withdraw in July 2005. Because the special advocate has withdrawn, a ruling that the court should have terminated the special advocate's appointment would have no practical legal effect on the existing controversy. Thus, the issue is moot.

II.

Husband asserts the court erred when it appointed a parenting coordinator because there was no statutory authority to do so. Even if husband is correct, we need not address the merits of this argument because the statutory authority to appoint a parenting coordinator now exists.

After the court entered its order in this case, the General Assembly enacted § 14–10–128.1, C.R.S.2005, which provides that the court may, on its own motion, appoint a parenting coordinator as a neutral third party to assist in the resolution of disputes

between the parties concerning parental responsibilities. Thus, even if the court lacked authority when it made the appointment, it now has such authority. We conclude that reversing and remanding would not serve judicial economy, and therefore, we decline to address the issue on its merits. *Cf. Velarde v. Zavaras*, 960 P.2d 1162 (Colo.1998).

## III.

■ Husband asserts the court granted arbitration powers to the parenting coordinator without the parties' consent in paragraph 13 of its November 2, 2004 order. We agree that paragraph 13 of that order gave the parenting coordinator too much authority.

A parenting coordinator may help the parties agree on structured guidelines to implement a parenting plan; develop guidelines for communication between the parties; suggest appropriate resources to help them learn appropriate communication skills and improve their parenting skills; help them realistically identify the sources and causes of conflict between them; and help them develop parenting strategies to minimize conflict. Section 14–10–128.1(3)(a)–(e), C.R.S. 2005.

In these ways, the parenting coordinator may help the parents resolve their differences. However, § 14–10–128.1 does not permit the parenting coordinator to make decisions or resolve disputes that the parents are unable to resolve.

Here, paragraph 13 of the court's November 2, 2004 order purported to give the parenting coordinator authority to "resolve the differences between the parents when they cannot agree." The clear import of this paragraph was to grant decision-making authority to the parenting coordinator, which is contrary to § 14–10–128.1(3). *Cf. In Interest of D.R.V-A.,* 976 P.2d 881 (Colo.App.1999)(error for trial court to delegate decisions regarding parenting time to guardian ad litem); *In re Marriage of McNamara,* 962 P.2d 330 (Colo.App. 1998)(same); *In re Marriage of Elmer,* 936 P.2d 617 (Colo.App.1997)(error for trial court to delegate to psychiatrist authority to determine whether to permit overnight visitation).

Therefore, that portion of the November 2, 2004 order cannot stand.

However, although paragraph 13 of the trial court's order exceeded the scope of statutory authority, the trial court need not conduct a hearing on remand. Instead, we direct the court to delete the first sentence of paragraph 13 of its November 2, 2004 order and insert the following language: "The Court orders the appointment of a parenting coordinator to assist in the resolution of disputes between the parties concerning parental responsibilities as provided for in § 14–10–128.1."

## IV.

■ Husband asserts the court erred when it granted wife the authority to enroll the children in therapy without finding, under § 14–10–131(2)(c), C.R.S.2005, that retaining the existing allocation of decision-making authority endangered or impaired the children. We disagree.

The record shows that the court did not give wife authority to make decisions about the children's therapy. The order itself states, "The Court chooses not to allocate different parental responsibilities to each parent."

The order resolved a long-standing dispute between the parties about therapy. The record shows that whether the children should be in therapy has been an issue throughout the proceedings. Because the joint decision makers could not resolve the issue, the court did so. Husband has cited to, and we have found, no authority that prohibits the court from resolving a dispute between joint decision makers.

Moreover, the record supports the court's order granting wife authority to obtain therapy for the children. The clinical social worker who performed the parenting evaluation testified that the children needed to speak to a professional about their parents, and it was "highly appropriate" that they be in individual and family therapy. The record supports that conclusion that the children had emotional issues regarding both parents and needed professional assistance and an "absolutely neutral place" to talk about their feelings, emotions, and current events.

Because the evidence supports the court's order regarding family therapy, we will not disturb it on appeal. *See People in Interest of V.H.*, 749 P.2d 460 (Colo.App.1987).

### V.

■ Husband argues he was denied due process when the court granted a motion to quash filed by one of his potential witnesses. Again, we disagree.

Pursuant to C.R.C.P. 45(c), when a party serves a witness with a subpoena, the party must also pay witness fees for one day's attendance and mileage as provided by law. It is undisputed that husband did not provide the potential witness with his attendance and mileage fees. We reject husband's argument that the amount of witness fees owed was de minimis and, therefore, that quashing the subpoena allowed form to triumph over substance. *See Loomis v. Seely*, 677 P.2d 400 (Colo.App.1983). Because he did not follow the rules of procedure, the court's ruling is not an abuse of discretion. *Cf. Donelson v. Fritz*, 70 P.3d 539 (Colo.App.2002)(rulings on discovery issues are committed to the discretion of the trial court).

■ We also disagree with husband's assertion that quashing the subpoena violated his due process rights and deprived him of a full and fair hearing. To establish a due process violation, husband had to show he was prejudiced by the absence of the witness, which he has not shown. *See People in re A.L.B.*, 994 P.2d 476 (Colo.App.1999).

Here, the court granted husband's request for equal parenting time. Thus, husband obtained the relief he sought, even without the testimony of the potential witness. Consequently, he has not established prejudice.

In his reply brief, husband also argues that the court should not have granted the motion to quash on the ground that he had not paid expert witness fees. Although wife raised the issue of expert fees in her brief, the court did not quash the subpoena on that ground. Consequently, we need not reach this argument.

### VI.

■ Husband contends the court erred when it refused to allow him to obtain the underlying reports and data in the special advocate's file. We are not persuaded.

Husband relies on the Chief Justice Directives to show that the court erred. The Chief Justice Directives are policy statements promulgated pursuant to the Colorado Supreme Court's general power to administer the Colorado judicial system. *Bye v. Dist. Court*, 701 P.2d 56 (Colo.1985).

The version of Standard 12 in effect at the time of the hearing provided that the special advocate shall, if requested, make available the underlying data or reports in the special advocate's file. The comment to Standard 12 stated that if the special advocate believes the release of any particular information or data would endanger any person's welfare, the special advocate should inform counsel and the court of the concerns and await further direction from the court before releasing the information in question.

Following husband's request for the underlying data and reports here, the special advocate asked the court for clarification. The court found that releasing the file would endanger the welfare of the children. Husband asserts the court's ruling was erroneous. However, the record supports the court's finding and we perceive no error.

The June 15, 2005 order is affirmed in its entirety. The November 2, 2004 order is affirmed, with the exception of the first sentence of paragraph 13 directing the parenting coordinator to "resolve the differences between the parents when they cannot agree," which is reversed. The case is remanded to the trial court to delete the first sentence of paragraph 13 and insert the following sentence: "The Court orders the appointment of a parenting coordinator to assist in the resolution of disputes between the parties concerning parental responsibilities as provided for in § 14–10–128.1." The second sentence of paragraph 13 shall remain the same.

Judge CASEBOLT and Judge ROMÁN concur.