The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 8, 2024

## 2024COA12

**No. 22CA1714, *People in Interest of E.E.L-T.* — Family Law — Allocation of Decision-making Responsibility — Impasse Between Joint-Decision-makers — Best Interests of the Child**

A division of the court of appeals, clarifying an issue not directly addressed in *In re Marriage of Thomas*, 2021 COA 123, holds that the district court need not find endangerment before breaking an impasse between parents with joint decision-making responsibility by making the disputed decision for the parents.

Court of Appeals No. 22CA1714
City and County of Denver District Court No. 14DR30919
Honorable Christine C. Antoun, Judge

In re the Parental Responsibilities Concerning E.E.L-T., a Child,

and Concerning Robert Sean Larkin,

Appellee,

and

Lydia Dawn Toupin,

Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE TOW
Lipinsky and Grove, JJ., concur

Announced February 8, 2024

Colorado Legal Group, Hannah M. Clark, Denver, Colorado, for Appellee

Peak Legal Services, LLC, Todd Narum, Denver, Colorado, for Appellant

¶ 1   In this post-decree proceeding concerning the allocation of parental responsibilities for E.E.L-T. (the child), Lydia Dawn Toupin (mother) appeals the district court's order adopting a magistrate's order for the child to receive a COVID-19 vaccine. This dispute requires us to clarify an issue not directly addressed in *In re Marriage of Thomas*, 2021 COA 123: whether the district court must find endangerment before breaking an impasse between parents with joint decision-making responsibility. Concluding that no such finding is required, we affirm.

## I.   Facts

¶ 2   Mother and Robert Sean Larkin (father) are the unmarried parents of the child. Pursuant to the parties' court-approved parenting plan, they have shared responsibility for the child's medical decisions since 2015.

¶ 3   The parties reaffirmed their agreement for shared decision-making responsibility for medical decisions in 2021. However, they could not agree at that time whether the child should receive a COVID-19 vaccine.

¶ 4   Father thereafter filed a verified motion to modify decision-making under section 14-10-131, C.R.S. 2023, or,

alternatively, to authorize the then-seven-year-old child to receive a COVID-19 vaccine. In his motion, father asked the court to (1) grant him sole medical decision-making responsibility; (2) order the child to receive a COVID-19 vaccine and future boosters; or (3) grant him the authority to make decisions concerning the specific issue of COVID-19 vaccines (but not award him full decision-making responsibility).

¶ 5    After mother expressed "deep[] concern[s] about the minor child's health as it pertains to this vaccine," the district court magistrate set the matter for a hearing.

¶ 6    The magistrate heard from Dr. Mary Ellen Staat (a pediatric infectious disease specialist) and Dr. Katie Dickinson (the child's pediatrician), both of whom appeared as lay witnesses and testified that, in their personal experiences as clinicians, they had not seen serious adverse reactions or deaths result from the administration of a COVID-19 vaccine to a child. Dr. Staat further testified that the Centers for Disease Control and Prevention (CDC) recommended the vaccine for children five years of age and older. The magistrate also heard from mother's expert witness, Dr. Peter Andrew McCullough (an internal medicine physician and cardiologist), who

2

testified that the risk of COVID-19 vaccination for children outweighs the benefit, the vaccine had "alarmingly high rates" of serious adverse effects or death, and a healthy child should not receive the vaccine. Finally, mother testified that she had concerns about the lack of testing for the COVID-19 vaccines, as well as their efficacy and possible significant adverse effects.

¶ 7 After the hearing, the magistrate entered a written order that included the following findings of fact:

> The Court finds that the minor child is endangered and potentially endangering others by not having in place a party who can make decisions about whether the minor child can receive treatment surrounding the [COVID-19] virus. This issue will continue if not resolve[d] as different strains of [COVID-19] are emerging and booster vaccines are becoming available. Additionally, pursuant to those factors as enumerated in C.R.S. §14-10-124, [C.R.S. 2023,] that a modification of decision making is in the best interests of the child. As such, the Court finds, pursuant to C.R.S. §14-10-131, that the modification of decision making is appropriate, to have in place someone who can make decisions regarding [COVID-19] for the minor child, until he becomes an adult and can make decisions for himself.

¶ 8 The court then entered the following order:

> 1. [Father]'s Emergency Verified Motion to Modify Decision Making or alternatively, allow

3

the Child to Receive the [COVID-19] Vaccine
. . . is GRANTED.

2. Minor child may receive [COVID-19] vaccines along with subsequent boosters with parties agreeing to the type of vaccine. If no agreement on the type of vaccine[,] the child may receive the vaccines . . . from Pfizer.

3. Parties will retain joint decision making on all major decisions surrounding the minor child.

. . . .

5. The Court finds these orders are in the best interests of the minor child.

¶ 9 Mother timely filed a C.R.M. 7(a) petition seeking relief from the magistrate's order, arguing, among other things, that the evidence did not support what mother characterized as the magistrate's finding that the child was endangered by not receiving a COVID-19 vaccine. The district court rejected mother's argument:

The magistrate did not find that the minor child is endangered by not having the vaccine, but only that the minor child is endangered by not having *a party in place* to make decisions about the minor child's *treatment* surrounding the COVID-19 virus. The magistrate found it was in the best interest of the minor child "to have in place someone who can make decisions regarding [COVID-19]." . . . Based on the statements made within the order, this Court concludes that the magistrate did not make a factual finding that the minor child

4

was endangered by not receiving the COVID-19 vaccine as [mother] alleges.

¶ 10     The district court went on to discuss the nature of the magistrate's order in light of father's three alternative requests. The district court initially characterized the magistrate's order as having selected father's second alternative — ordering that the child would receive the vaccine and future boosters. The district court concluded that the magistrate's order was "in accord with existing case law, and not legally incorrect."

¶ 11     However, later in the same order, the district court characterized the magistrate's decision as having "modified decision-making ability finding it was in the best interest of the minor child to have someone in place to make these decisions for the minor child."

## II.     Mootness and Show Cause Order

¶ 12     Before mother filed her notice of appeal, the child received a COVID-19 vaccine. We issued an order to mother asking her to show cause whether we had jurisdiction over what appeared to be a moot appeal.

¶ 13    An issue is moot when a judgment, if rendered, would have no

practical legal effect on the existing controversy. *In re Marriage of*

*Dauwe*, 148 P.3d 282, 284 (Colo. App. 2006). When an issue

presented on appeal becomes moot by subsequent events, we will

not render an opinion on the merits of the issue. *Id.*

¶ 14    The magistrate's order authorizes the child to receive an initial

COVID-19 vaccine "along with subsequent boosters," as needed.

Mother therefore asserts, and we agree, that the appeal is not moot.

*See id.* We discharge the show cause order and consider mother's

appellate contentions.

### III.   Appellate Standard of Review

¶ 15    Our review of the district court's decision is effectively a

second layer of appellate review, and, like the district court, we

must accept the magistrate's factual findings unless they are clearly

erroneous. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22. "A

court's factual findings are clearly erroneous only if there is no

support for them in the record." *Van Gundy v. Van Gundy*, 2012

COA 194, ¶ 12. But we review de novo issues of law, including

whether the magistrate applied the proper legal standard. *See*

*Sheehan*, ¶ 22.

6

IV.    The Nature of the Magistrate's Order

¶ 16    The parties do not agree on the posture of this appeal.  Mother contends that the appeal concerns the magistrate's erroneous factual finding that the child was endangered by not receiving a COVID-19 vaccine.  Father counters that the magistrate made no such finding and found only that the child was endangered "by not having in place a party who can make decisions about whether the minor child can receive treatment surrounding the [COVID-19] virus."

¶ 17    Both parties, however, appear to presume that the magistrate modified decision-making responsibility by giving father the authority to decide whether the child would receive a COVID-19 vaccine.  For example, mother asserts that the magistrate "award[ed father] the ability to make the decision for the specific issue of the COVID Vaccine," while father contends that the magistrate did not "abuse her discretion in concluding that the tiebreaker should be" father.

¶ 18    In fairness to the parties, neither the magistrate's nor the district court's order is entirely clear.  Both orders contain language that suggests a modification of decision-making responsibility.  For

example, the magistrate found that "a modification of decision making is in the best interests of the child" and that "[i]t is not necessary to modify decision making *in any other area* as the parties have been able to reach agreements." (Emphasis added.) And, in adopting the magistrate's order, the district court observed, "The magistrate did not order [father] to vaccinate the minor child; the magistrate modified decision-making ability finding it was *in the best interest of the minor child* to have someone in place to make these decisions for the minor child."

¶ 19 But both orders also suggest that the magistrate did not actually modify decision-making responsibility and, instead, simply broke the impasse by making the decision herself. Nowhere in the magistrate's order does she state that father shall have decision-making authority in this area. To the contrary, the magistrate merely orders that the "[m]inor child may receive [COVID-19] vaccines," and that, if the parents could not agree on the type of vaccine, the child would receive the Pfizer vaccine. Indeed, the magistrate explicitly ordered that the "[p]arties will retain joint decision making on all major decisions surrounding the minor child." For its part, the district court noted father's three

alternative requests and concluded that the magistrate "accepted [father's] second alternative," which was simply to order that the minor child may receive a COVID-19 vaccine and future boosters. Recall that the first alternative father requested was to be allocated medical decision-making while the third was authorization to make the decision for this specific issue — neither of which the magistrate granted.

¶ 20    To the extent the magistrate and the district court considered the order to be a change in decision-making, it appears that they viewed the modification as making *the court* the decision-maker. To the extent that is the case, we note that such a step is both unnecessary and of no effect. A court allocates decision-making authority "between the parties." § 14-10-124(1.5)(b). When parents who share joint decision-making cannot agree on a particular decision, however, the court has authority to break the impasse by making the decision for them. *Thomas*, ¶ 38. In doing so, the court need not — indeed, cannot — take the affirmative step of allocating decision-making authority to itself because it is not a party. *See* § 14-10-124(1.5)(b); *see also Dauwe*, 148 P.3d at 285 (noting that

the division was aware of "no authority that prohibits the court from resolving a dispute between joint decision makers").

¶ 21 Thus, notwithstanding the ambiguous language in both the magistrate's and the district court's orders, we conclude that the magistrate did not modify the allocation of decision-making authority. Instead, when faced with an impasse between joint decision-makers, the magistrate broke the tie herself.

¶ 22 We turn now to whether she did so appropriately.

### V. No Endangerment Showing Is Required Before the Court Can Break an Impasse Between Joint Decision-Makers

¶ 23 Mother argues that the court can only break an impasse between joint decision-makers if it finds that the child is endangered. But neither *Dauwe* nor *Thomas* requires such a finding.[1]

¶ 24 In *Dauwe*, the parents could not agree whether their children should be in therapy. 148 P.3d at 285. In resolving this

---

[1] Mother's reliance on *In re Marriage of Crouch*, 2021 COA 3, is also misplaced. In *Crouch*, the issue was not what showing was required for the court to break an impasse but, rather, what showing was required to modify the allocation of decision-making responsibility. *Id.* at ¶ 26. The case is therefore inapposite, as we have concluded that the magistrate here did not modify the allocation of decision-making responsibility.

"long-standing dispute," the district court opted not to modify the prior order granting joint decision-making responsibility but ordered that the wife should have the authority to obtain therapy for the children. *Id.* Significantly, the district court entered this order "without finding . . . that retaining the existing allocation of decision-making authority endangered or impaired the children." *Id.* A division of this court upheld that order. *Id.* at 286.

¶ 25    Later, in *Thomas*, the parties disputed whether to send their child to high school in Adams County or Jefferson County. *Thomas*, ¶ 9. Finding that the parties were at a "total impasse" in resolving the school issue, the district court decided the issue for the parties, ordering the child to attend school in Jefferson County. *Id.* at ¶¶ 16, 38. In upholding this decision, the division reasoned that, "when one or both of [the] parents are unable to responsibly discharge their duty to make a particular decision, a court is sometimes left with no alternative but to do so." *Id.* at ¶ 36. The division held that the district court has impasse-breaking authority between two parents with joint decision-making responsibility. *Id.* at ¶ 38. Nowhere in the *Thomas* decision did the division analyze whether the child was endangered. Indeed, the district court had

11

initially denied the mother's motion to make her the sole educational decision-maker because she had failed to demonstrate that the existing joint decision-making allocation endangered the child. *Id.* at ¶ 12. Notwithstanding this lack of endangerment, after other attempts by the district court to resolve the issue failed, the court simply made the decision itself. *Id.* at ¶¶ 16-17.

¶ 26 Indeed, it makes no sense to require an endangerment finding before a court exercises its impasse-breaking authority. If the court were able to find endangerment, it would not need to make the decision for the parents; the court, instead, could simply modify decision-making authority and make one parent the sole decision-maker. Moreover, if endangerment were required, the inability to break the impasse would effectively grant veto power to a joint decision-maker who prefers the status quo without any consideration of the guiding principle in these cases — the best interests of the child. *See* § 14-10-124(1.5) (charging the court with acting "in accordance with the best interests of the child giving paramount consideration to the child's safety and the physical, mental, and emotional conditions and needs of the child").

¶ 27    Instead, as *Dauwe* and *Thomas* illustrate, even if there is no endangerment, when there is an impasse between joint decision-makers, the court may break that impasse by making the decision it determines to be in the best interests of the child. *Dauwe*, 148 P.3d at 285; *Thomas*, ¶¶ 17, 38 n.7.  Here, the magistrate did just that, and mother does not challenge the magistrate's best interests determination.

¶ 28    Because the magistrate's determination that getting vaccinated was in the child's best interest is supported by the record, we discern no basis for reversal on this ground.[2]

### VI.    Inadmissible Opinion Testimony

¶ 29    Mother contends that the magistrate erred by allowing Drs. Staat and Dickinson to offer expert opinion testimony in the guise of personal knowledge and experience; characterizing Drs. Staat and Dickinson as "non-retained" experts; and finding that Drs. Staat and Dickinson could testify based on their own personal knowledge, experiences, and qualifications.  Assuming without

---

[2] In light of our resolution of this issue, we need not determine whether the magistrate's specific endangerment finding has record support, because the finding was unnecessary.

13

deciding that the magistrate erred in these respects, any errors are harmless.

¶ 30    We review evidentiary rulings in civil cases for harmless error. *Bernache v. Brown*, 2020 COA 106, ¶ 26.  If an error "does not affect the substantial rights of the parties," we must disregard it. C.R.C.P. 61; *see* C.A.R. 35(c).  An error affects a substantial right only if it substantially influenced the outcome of the case or impaired the basic fairness of the trial.  *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010).  We will reverse only if an error resulted in substantial prejudice to a party.  *In re Mendy Brockman Disability Tr.*, 2022 COA 75, ¶ 45.

¶ 31    No substantial prejudice occurred here.  In her order, the magistrate wrote, "While the doctors and experts presented all make a reasonable argument for their positions, the [CDC] is the authority in this matter."  Thus, the magistrate's order clearly reflects that she did not rely on the testimony of Dr. Staat or Dr. Dickinson.  Notably, mother's witness, Dr. McCullough, testified that the CDC made the recommendation that children receive the COVID-19 vaccine, so the order is not without record support.  *See Sheehan*, ¶ 22; *Van Gundy*, ¶ 12.  Consequently, we can say with

14

fair assurance that any errors in allowing Drs. Staat and Dickinson to testify did not substantially influence the magistrate's decision. *See Bly*, 241 P.3d at 535. We therefore disregard the alleged errors.

## VII. Disposition

¶ 32    The order is affirmed.

JUDGE LIPINSKY and JUDGE GROVE concur.