24CA0498 Marriage of Ziebinski 10-10-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0498
Larimer County District Court No. 21DR30034
Honorable Susan Blanco, Judge

In re the Marriage of

Danielle Ziebinski n/k/a Danielle Curry,

Appellee,

and

Marek Ziebinski,

Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 10, 2024

No Appearance for Appellee

Marek Ziebinski, Pro Se

¶ 1    In this post-dissolution of marriage case, Marek Ziebinski (father) appeals the district court's order resolving the parties' dispute over where the parties' children would attend school. We affirm.

## I.    Background

¶ 2    In 2021, the district court dissolved the marriage between father and Danielle Ziebinski, now known as Danielle Curry (mother), and entered a permanent order concerning the parties' two children — then-two-year-old C.Z. and then-five-year-old L.Z. In doing so, the court allocated joint decision-making responsibility to the parties concerning the children's education.

¶ 3    For the 2023-2024 school year, C.Z. attended preschool and L.Z. attended a charter school in Larimer County. Before the 2024-2025 school year — C.Z.'s kindergarten year and L.Z.'s third grade year — a dispute arose concerning where the children would attend school.

¶ 4    Father filed a motion requesting that the court resolve the dispute. In his motion, he alleged that the parties had agreed in writing that both children would move to new schools for the upcoming school year. He asserted that the charter school L.Z.

currently attended "lack[s] in academic merit." Father also explained that mother lived in Fort Collins while he had relocated to Loveland, and he wanted the children to attend a school that was roughly equidistant from the parties. Mother opposed the motion, denying the existence of a written agreement to change schools and asserting that any issues with distance from school were of father's own making.

¶ 5 After the parties' unsuccessful attempt to mediate, a district court magistrate held a hearing. By the time the matter was heard, however, both parties had changed their positions regarding the children's school. Father now wanted both children to attend the charter school L.Z. was already attending. Mother wanted the children to attend her neighborhood school.

¶ 6 After the hearing, the magistrate determined that it was in the children's best interests for them to attend mother's neighborhood school. Father requested review by the district court, which declined to disturb the magistrate's order.

¶ 7 Father appeals.

## II. Applicable Law and Standard of Review

¶ 8     When parents share educational decision-making responsibility and they are unable to agree on the school for their children, the district court may break the parental deadlock. *In re Marriage of Thomas*, 2021 COA 123, ¶¶ 36-38; *see also In re Marriage of Dauwe*, 148 P.3d 282, 285 (Colo. App. 2006) (noting that there is "no authority that prohibits the court from resolving a dispute between joint decision makers"). When exercising this authority, the court is governed by the best interests of the child. *Thomas*, ¶¶ 17, 38 n.7.

¶ 9     We will uphold a district court's factual findings if the record supports them. *Dauwe*, 148 P.3d at 286. And because the ultimate determination of what is in the children's best interest is a matter within the district court's discretion, we will not disturb its judgment absent a showing that the court abused that discretion. *Cf. In re Marriage of Ciesluk*, 113 P.3d 135, 148 (Colo. 2005). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or is based on a misapplication of the law. *In re Marriage of Bochner*, 2023 COA 63, ¶ 12. We exercise every

presumption in favor of upholding its decision. *See In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007).

## III. Analysis

¶ 10 As father frames the issue, the district court erred by ordering the children to attend mother's neighborhood school because the evidence showed that "the child" (presumably meaning L.Z., since C.Z. was going to be starting kindergarten at a new school regardless) was thriving at the charter school, the charter school meets accreditation standards, and there was no evidence of abuse or neglect at the charter school. Father contends that, before the court was allowed to change the children's school, it was required to find that the children were being denied a competent education or subjected to abuse or neglect. Essentially, father argues for the imposition of something akin to an endangerment standard before a child's school can be changed. We reject this contention.

¶ 11 There is no Colorado statute or case law that imposes a heightened standard to judicial decisions resolving parental disagreements concerning where the children attend school. To the contrary, when a district court engages in its impasse-breaking authority, it must make its decision in the best interests of the

child. *Thomas*, ¶¶ 17, 38 n.7; *see also* § 14-10-124(1.7), C.R.S. 2024 ("[C]hildren have the right to have the determination of matters relating to parental responsibilities based upon the best interests of the child.").

¶ 12 While father continues to acknowledge that *Thomas* recognized the district court's authority to resolve an impasse between joint decision-makers, he argues that the case is distinguishable. In particular, father argues that a key fact in *Thomas* was that the child was moving from middle school to high school and, thus, was changing schools in any event. Notably, father does not appear to acknowledge that C.Z. was moving from preschool to kindergarten and, thus, like the child in *Thomas* was changing schools no matter what.

¶ 13 In any event, nothing in the *Thomas* decision suggests that the division placed any weight at all on the fact that the child was necessarily changing schools. Rather, *Thomas* stands for the simple proposition that where two parents who share decision-making authority cannot come to an agreement on a particular decision, the district court has the authority to break the impasse by deciding what is in the best interests of the child.

¶ 14     Because father reads *Thomas* too narrowly, he argues that the court is significantly restricted in exercising its tie-breaking authority, at least where the decision would entail moving a child from their established school. Relying entirely on decades-old out-of-state case law, father attempts to craft his endangerment-like standard.

¶ 15     He first argues that, because L.Z. was in a "stable environment" with respect to her schooling, there must be some showing of endangerment before disrupting that stability. Quoting *Ex parte McLendon*, 455 So. 2d 863, 865 (Ala. 1984), he argues that "[t]he positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child." Beyond the fact that we are not bound by out-of-state authority, this case does not support father's position. The uprooting referenced in *McLendon* did not involve a simple change of schools; rather, that case involved uprooting a child from her established home with her grandparents and moving her across the country to live with her mother, who had previously voluntarily surrendered custody. *Id.* at 864. In short, the case is wholly inapposite.

¶ 16    Father next invokes a sixty-year-old case from the Missouri Court of Appeals for the proposition that once parties have been allocated joint decision-making, "no further decision should be required of the court save to prevent the abuse of the child or the neglect of his essential interests." *Jenks v. Jenks*, 385 S.W.2d 370, 377 (Mo. Ct. App. 1964). Father asserts that the division in *Thomas* referenced *Jenks*, and thus appears to argue the division adopted its standards. Father is wrong on both counts.

¶ 17    First, contrary to father's assertion, the *Thomas* division never mentioned *Jenks*. The division did address *Griffin v. Griffin*, 699 P.2d 407, 409-10 (Colo. 1985), in which the Colorado Supreme Court discussed *Jenks*. But, as noted in *Thomas*, *Griffin*'s interpretation of the district court's statutory authority to be the decision-maker of last resort has been superseded by intervening amendments to the relevant statute, section 14-10-130, C.R.S. 2024. *Thomas*, ¶¶ 33-34. Thus, to the extent *Griffin*'s interpretation of the statute may have embraced *Jenks*, we cannot say the case has any continuing vitality.

¶ 18    Second, nothing in *Thomas* suggests that the division intended to incorporate the standards discussed in *Jenks*. To the contrary,

7

as noted, the division applied a best interests of the child standard. *Thomas*, ¶¶ 17, 38 n.7.

¶ 19     Here, the magistrate explicitly followed *Thomas* and properly applied the best interests standard.  In reaching her decision, the magistrate found that mother's neighborhood school has a strong academic program; it is an "IB school";[1] the school's teachings incorporate the use of technology, which will benefit the children; and it has a gifted and talented program.  The court found that there was little evidence that the charter school had any advantages over mother's neighborhood school and that, although father later changed his mind about the charter school's academic strengths, his motion stated that L.Z.'s education was clearly lacking at the charter school.

¶ 20     Further, the court found that the children have friends who attend both schools and that this was therefore not a defining issue.  The court also found that, although the charter school may have students who live closer to father's home, there was no

---

[1] An "IB school" means an international baccalaureate school. Mother testified that this meant that the school had an academically rigorous environment.

evidence that the children had socialized with any such students outside of school during father's parenting time.

¶ 21    Regarding the schools' locations, the court found that father's opposition to the location of mother's neighborhood school was disingenuous because the schools were only five minutes from each other.[2]  And though father touted the availability of a carpooling program at the charter school, the magistrate observed that there was no evidence he had ever used the program in the past.

¶ 22    Finally, the magistrate noted that there was no credible evidence to show that father would be prevented from being involved in the children's schooling or extracurricular activities if they attended mother's neighborhood school.  The magistrate also observed that father's concern over driving distance was an issue of father's convenience — not a concern about what is in the best interests of the children.  Ultimately, the court concluded that it was in the children's best interests that they attend mother's neighborhood school for the 2024-2025 school year.

---

[2] Indeed, based on the father's hearing exhibits, mother's neighborhood school appears to be several minutes *closer* to father's home.

¶ 23    To the extent that father points to contrary evidence, it was for the magistrate — not us — to resolve any factual conflicts. It was the magistrate's responsibility to determine the credibility of witnesses, the weight to give the testimony, and the inferences to be drawn from the evidence. *See In re Estate of Owens*, 2017 COA 53, ¶ 22; *see also In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (presuming that the district court considered all the evidence in reaching its decision). We cannot reweigh the court's factual determinations when, as here, the record supports them. *See Owens*, ¶ 22; *see also Hatton*, 160 P.3d at 330.

¶ 24    Finally, we reject father's objection to the magistrate considering his statements in his motion that the charter school was not up to academic standards. Despite father later changing course, which the magistrate acknowledged, the fact remains he made the statements — indeed, he made them under oath because the motion was a verified motion. Father points to no Colorado case law, nor are we aware of any, suggesting that this was an improper consideration.

¶ 25    Because the record supports the magistrate's findings, we will not disturb them.  *See Owens*, ¶ 22.  And in light of those findings, we cannot say the magistrate abused her discretion.

## IV.   Disposition

¶ 26    The order is affirmed.

JUDGE PAWAR and JUDGE SCHUTZ concur.