24CA1577 Marriage of Williams 11-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1577
City and County of Denver District Court No. 22DR1331
Honorable Norma A. Sierra, Judge
Honorable Deborah R. Eyler, Judge

In re the Marriage of

Terry Williams,

Appellant and Cross-Appellee,

and

Amy Goscha,

Appellee and Cross-Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE SCHOCK
Harris and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

Schaffner Law LLC, Joseph Maher, Greenwood Village, Colorado, for Appellant and Cross-Appellee

Cox Baker Page & Bailey, LLC, James S. Bailey, Alexandra K. Wetzler, Lone Tree, Colorado, for Appellee and Cross-Appellant

¶ 1     In this post-dissolution of marriage case between Terry Williams (father) and Amy Goscha (mother), father appeals the order modifying decision-making responsibility for their child.  He argues that the district court erred by allocating to mother sole decision-making authority over medical matters and international travel.  Mother cross-appeals the modification of parenting time over Thanksgiving and winter break.  We reverse the portions of the order modifying medical decision-making responsibility and the winter break parenting time schedule, and we remand for further proceedings consistent with this opinion.  We otherwise affirm.

I.     Background

¶ 2     The parties were married for four years and had one child. Upon the dissolution of their marriage, they stipulated to a parenting plan that provided for equal parenting time and joint decision-making responsibility for all major decisions regarding the child.  The district court approved the parenting plan.

¶ 3     A year and a half later, father filed a motion to modify decision-making responsibility.  He requested sole medical and educational decision-making authority, alleging that mother was endangering the child by refusing to allow him to be diagnosed and

treated for autism. Mother opposed the motion and asked the court to "evaluate [the] ability of the parties to continue sharing decision making, and if necessary, to allocate sole decision making to [her]." Mother also filed a motion to modify parenting time, which among other things, proposed modifications to holiday parenting time.

¶ 4 The parties filed competing proposed amended parenting plans. Both parties requested sole decision-making responsibility for the child's medical care and offered differing proposals for the division of parenting time over school holidays, including Thanksgiving and winter break. Mother's proposed plan also included a provision granting her final decision-making authority as to the propriety of any proposed international travel location.

¶ 5 After an evidentiary hearing, the district court allocated to mother sole decision-making responsibility for medical matters. In doing so, the court applied the "best interests of the child" standard in section 14-10-124(1.5)(b), C.R.S. 2025. Noting father's argument that an endangerment standard should apply under section 14-10-131(2)(c), C.R.S. 2025, the court found that "should the endangerment standard apply, neither party has met their burden to show that the child is endangered by the other's decisions." The

court also adopted mother's proposed provision granting her final decision-making authority over the location of international travel.

¶ 6    As to parenting time over Thanksgiving and winter break, the court adopted a schedule that was different than the one proposed by either party. For Thanksgiving, the parties have parenting time from Wednesday to Friday in alternating years. For winter break, one party has parenting time from the beginning of break until Christmas Eve, and the other party has parenting time from Christmas Eve until the end of break, again in alternating years.

¶ 7    Mother filed a post-hearing motion for reconsideration of the Thanksgiving and winter break parenting time schedule. She argued that the Thanksgiving schedule inadvertently modified the parties' existing schedule and that the winter break schedule interfered with her extended family gathering and resulted in an unequal division of time. The district court denied the motion.

## II. Medical Decision-Making Responsibility

¶ 8    Father contends that the district court erred by modifying the parties' joint decision-making responsibility over medical matters despite its finding that the child was not endangered. We agree.

A. Legal Standard and Standard of Review

¶ 9 The district court may modify a decree allocating decision-making responsibility when the circumstances have changed and the modification is necessary to serve the best interests of the child. § 14-10-131(2). But the court must retain the existing allocation unless, as relevant here, (1) the parties agree to the modification, or (2) the existing allocation "endanger[s] the child's physical health or significantly impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." § 14-10-131(2)(a), (c).

¶ 10 Thus, a district court cannot modify decision-making responsibility based solely on the best interests of the child. *In re Marriage of Humphries*, 2024 COA 92M, ¶ 22. Rather, absent an agreement or one of the other circumstances specified in section 14-10-131, a change in decision-making responsibility requires a finding of endangerment. *Id.* at ¶¶ 18, 20. This standard is "more stringent than the best interests of the child standard." *Id.* at ¶ 20.

¶ 11 The allocation of parental responsibilities lies within the sound discretion of the district court. *In re Marriage of Crouch*, 2021 COA

4

3, ¶ 21. But we review de novo whether the district court applied the correct legal standard in making its determination. *Id.*

## B. Analysis

¶ 12 The parenting plan that the district court adopted at the time of the dissolution decree allocated decision-making responsibility for medical matters (and all other major decisions) to both parties jointly. The change to sole medical decision-making by mother was a modification of that original allocation. *See In re Marriage of Wenciker*, 2022 COA 74, ¶¶ 2, 15 (applying endangerment standard to change from joint to sole decision-making); *Crouch*, ¶¶ 1, 34 (same). The district court thus could not make that change without finding one of the circumstances in section 14-10-131(2)(a)-(c). *Humphries*, ¶¶ 18-20. By doing so based solely on the best interests of the child — and with an express finding that the child was *not* endangered — the district court erred. *See id.* at ¶¶ 20, 23.

¶ 13 In rejecting the endangerment standard, the district court relied on *In re Marriage of Stewart*, 43 P.3d 740 (Colo. App. 2002), as does mother on appeal. In *Stewart*, the original decree granted the parties joint legal and physical custody, and father's motion for modification asked that he be named the child's primary residential

parent. *Id.* at 741. Relying on *In re Marriage of McNamara*, 962 P.2d 330 (Colo. App. 1998), the division held that "where the parties share equal parenting responsibilities, any subsequent modification of that arrangement is governed by the best interests standard." *Stewart*, 43 P.3d at 742. It reasoned that a decree that does not "designate a residential parent" is, "in effect, a deferral of the custody decision," so any change should be governed by the same standard that would have applied at the time of the decree. *Id.*

¶ 14      But *Stewart* concerned a change to *parenting time*. And there is a material difference between the statutory standards for modification of parenting time and modification of decision-making responsibility. Under section 14-10-129(2), C.R.S. 2025, endangerment (or one of the other preconditions) is required for a modification of *parenting time* only when the modification "changes the party with whom the child resides a majority of the time." *See In re Marriage of Dale*, 2025 COA 29, ¶ 21 (explaining that a change in parenting time is subject to the endangerment standard only if it "change[s] the primary residential parent") (*cert. granted in part* July 21, 2025). Because the decree in *Stewart* "did not designate a residential parent," there was no majority residential parent for the

court to change. 43 P.3d at 742; *see also McNamara*, 962 P.2d at 331 (noting that "[n]o residential parent was designated"). Thus, the statutory endangerment standard in section 14-10-129(2)(d) was not implicated.

¶ 15 In contrast, section 14-10-131(2) provides that *any* change in the allocation of decision-making responsibility — not just a change in a *majority* decision-maker — is subject to the endangerment standard (or another precondition). Indeed, *Stewart* recognized this distinction, noting that the endangerment standard generally applies to modifications of decision-making responsibility, while the best interests standard applies to modifications of parenting time. 43 P.3d at 742. And more recent cases have consistently applied the endangerment standard to changes to joint decision-making. *See Wenciker*, ¶¶ 2, 15; *Crouch*, ¶¶ 1, 34. To the extent *Stewart* suggests otherwise by referring generally to a modification of "equal parenting responsibilities," 43 P.3d at 742, it is contrary to the plain language of section 14-10-131(2). *See Wenciker*, ¶ 18 ("When the statutory language is clear, we must enforce it as written.").

¶ 16 We also reject mother's contention that the joint decision-making ordered by the original decree was not an allocation of

7

decision-making responsibility. Section 14-10-124(1.5)(b) provides that, in determining decision-making responsibility, "the court may allocate the decision-making responsibility with respect to each issue affecting the child mutually between both parties or individually to one or the other party or any combination thereof." Thus, an allocation of joint decision-making responsibility is just that — an allocation — not a deferral of that decision. *Cf. Stewart*, 43 P.3d at 742; *In re Marriage of Thomas*, 2021 COA 123, ¶ 34 ("Under the old statute, even where there was an agreement for joint decision-making, there was only one custodian . . . .").

¶ 17    Mother also relies on cases applying a best interests standard to the resolution of a dispute between joint decision-makers. *See Thomas*, ¶ 38 (resolving dispute over school choice); *In re Marriage of Dauwe*, 148 P.3d 282, 285 (Colo. App. 2006) (resolving dispute over therapy). But there is a difference between breaking an impasse on a particular issue and modifying decision-making responsibility. *See In re E.E.L-T.*, 2024 COA 12, ¶¶ 19-21; *Dauwe*, 148 P.3d at 285 (noting that by resolving dispute about therapy, court did not change allocation of decision-making responsibility). The district court in this case did not simply "break[] an impasse

between parents with joint decision-making responsibility." *E.E.L-T*, ¶ 1. It changed the allocation of decision-making responsibility by allocating "sole decision making over medical matters to [m]other."

¶ 18    Finally, mother contends that, even if the heightened standard in section 14-10-131 applies, we should nevertheless affirm because "[t]he parties agree[d] to the modification." § 14-10-131(2)(a). She asserts that the parties agreed that a modification of joint medical decision-making responsibility was necessary, even if they disagreed as to *who* should be the sole decision-maker.

¶ 19    But section 14-10-131(2)(a) requires the parties to agree to *the* modification, not simply *a* modification. *See Brooks v. Zabka*, 450 P.2d 653, 655 (Colo. 1969) ("[T]he definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'"). The parties' shared view that their joint medical decision-making authority should be modified in some way — with vast disagreement about what that modification should be — was not an agreement to *the* modification the court ordered. To the contrary, father expressly asserted that if he was not awarded sole decision-making, the parties should continue to share joint decision-making authority.

9

¶ 20    Thus, because the district court found that the child was not endangered by the existing allocation of joint decision-making responsibility, it could not modify that allocation.  We reverse the portion of the order allocating sole medical decision-making authority to mother and remand the case for the district court to enter an order that "retain[s] the allocation of decision-making responsibility established by the prior decree."  § 14-10-131(2).

## III.    International Travel

¶ 21    Father contends that our conclusion that the endangerment standard applies to modifications of decision-making authority means that we must also reverse the provision of the order giving mother final decision-making authority, in the event of a dispute, "as to whether a suggested traveling location is appropriate for [the child]."  We view the two issues differently, however, and disagree.

¶ 22    First, although mother included this provision in her proposed parenting plan submitted before the hearing, father did not object to it — including when the district court read the provision as part of its oral order.  And father's proposed order submitted after the hearing — which he asked the court to enter — also included that provision.  Father's general opposition to mother's request for sole

10

decision-making authority was insufficient to alert the court to his specific objection to the international travel provision. *See Crouch*, ¶ 13 (noting that opposition to an adversary's request does not preserve all potential arguments on appeal). We do not ordinarily address arguments not raised in the district court. *Id.* at ¶ 14.

¶ 23 Second, even if we were to conclude that father preserved this argument, we are not persuaded that the international travel provision *modified* the allocation of decision-making responsibility in the original decree. The original parenting plan did not say anything about decision-making responsibility for international travel. Rather, its allocation of joint decision-making responsibility was limited to "major decisions," which it defined to include "major medical, education, religious, and extracurricular activities." Father makes no argument on appeal that decisions regarding the propriety of international travel locations fell within that provision.

¶ 24 The original parenting plan did require both parties to consent to international travel to certain countries. But that provision remains in the revised order. The court simply added a clause addressing a scenario that was not addressed one way or the other in the original plan — a dispute between the parties as to "whether

11

a suggested traveling location is appropriate." In that specific scenario, the court ruled that mother would have final decision-making authority, while also ordering that mother "shall not unreasonably deny [f]ather's request" to travel internationally.

¶ 25 Because the original decree and parenting plan did not allocate decision-making responsibility over the propriety of international travel locations, the inclusion of that provision did not modify the existing allocation. *See* § 14-10-131(2). And even if it did, there was no prior allocation to retain. *See id.* We therefore conclude that, even if father's argument was preserved, the district court did not err by adding the international travel provision based on the best interests of the child. *See id.*; § 14-10-124(1.5)(b).

## IV. Holiday Parenting Time

¶ 26 Mother contends that the district court abused its discretion by adopting a new parenting time schedule for Thanksgiving and winter break that results in an unequal allocation of the holidays. She also asserts that the court failed to make sufficient findings to explain the basis of its order. We perceive no abuse of discretion as to the Thanksgiving holiday. But we agree with mother that the

12

record does not support the district court's stated basis for its modification of the winter break parenting time schedule.

## A. Additional Background

¶ 27 The original parenting plan provided that the parties would (1) exercise parenting time in alternate years over the Thanksgiving holiday, from the Wednesday before Thanksgiving to the Sunday after; and (2) split parenting time equally over the school winter break based on a midpoint of December 27, with the parties alternating each year whether they had the first or second half of the break. Mother had the first half of winter break (including Christmas) in even years, and father had the first half in odd years.

¶ 28 Both parties proposed new holiday parenting time schedules. For Thanksgiving, mother proposed that the weeklong break be split in half (from the child's release from school through noon on the Wednesday before Thanksgiving, and from noon on that Wednesday through the child's return to school), with the parties alternating years. Father proposed giving one party the entire week from Monday to Friday, again in alternating years. For winter break, both parties favored keeping an even split. The only difference was who had the child for which half: Mother proposed that she would

13

have her choice of halves in even years and father would have his choice in odd years, while father proposed that he would have the first half in even years and mother the first half in odd years.

¶ 29 The district court adopted a schedule that did not match either party's proposal. The court first explained that "it is in the best interest of all parties if we don't start messing with the weekends any more than we have to." It then defined Thanksgiving as Wednesday evening to Friday evening[1] and awarded the parties parenting time in alternating years. For winter break, it split the break with the midpoint at 5 p.m. on December 24 and ordered the parties to alternate which part they received — with mother receiving the first part in even years and father in odd years. The court acknowledged that this division did not split the winter break equally, but it explained that "the important part is Christmas Eve and Christmas Day" and its order "addresses that as best you can."

### B. Legal Standard and Standard of Review

¶ 30 The district court may modify parenting time whenever doing so would serve the child's best interests. *See* § 14-10-129(1)(a)(I).

---

[1] The court initially defined Thanksgiving as Wednesday evening to Thursday evening but extended it by a day at mother's request.

In making that determination, the court must consider the relevant factors in section 14-10-124(1.5)(a). *In re Custody of C.J.S.*, 37 P.3d 479, 482 (Colo. App. 2001). The district court need not make findings on every factor, but its findings must be "sufficiently explicit . . . to give the reviewing court a clear understanding of the basis of the order." *In re Marriage of Pawelec*, 2024 COA 107, ¶ 44.

¶ 31    A district court has broad discretion to modify an existing parenting time order, and we must exercise every presumption in favor of upholding its decision. *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 13. We review the parenting time determination for an abuse of discretion, which occurs when the decision is manifestly arbitrary, unreasonable, or unfair, or when the court misapplied the law. *Pawelec*, ¶ 45. If the order is supported by competent evidence in the record, we will not disturb it. *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007).

## C.    Thanksgiving

¶ 32    The district court sufficiently explained the basis for its new Thanksgiving parenting time schedule. Specifically, the shift from a Wednesday-Sunday holiday to a Wednesday-Friday holiday — and the court's rejection of mother's Friday-Wednesday/Wednesday-

15

Monday split — was consistent with the court's stated desire to avoid "messing with the weekends." In other words, the court had set an alternating weekend schedule and wanted to minimize the disruption to that baseline schedule as much as possible. Further, by limiting the Thanksgiving holiday to two days, the district court also minimized the disruption to the regular weekday schedule.

¶ 33 Mother identifies some flaws with the court's resolution. In particular, she points out that since her regularly scheduled overnights are Wednesday and Thursday, the Thanksgiving holiday will encroach on her parenting time in father's years. She also explains that, in those years, father will have the child for seven consecutive days (his normal Monday-Tuesday, Thanksgiving Wednesday-Friday, and one of the adjacent weekends), and in her years, the child will need to move between the parties every two days during break (as he does under their normal schedule).

¶ 34 But in formulating the parenting time schedule, the district court was necessarily weighing several competing considerations — attempting to equalize parenting time, minimizing disruption and conflict, minimizing the child's time away from each parent, and accommodating each party's holiday time with the child. Indeed,

the change from a one-day Wednesday-Thursday holiday to a two-day Wednesday-Friday holiday was done at mother's request to accommodate her family's late afternoon Thanksgiving gathering. Even if the schedule is not perfect, we cannot say it was manifestly arbitrary, unreasonable or unfair. *See Pawelec*, ¶ 45.

### D. Winter Break

¶ 35 The district court explained its decision to designate December 24 as the midpoint of winter break by saying that it wanted to avoid a situation where one parent does not have the child on either Christmas Eve or Christmas Day. It explained that neither the prior parenting time order nor the parties' proposals split the break in a way that addressed the Christmas holiday.

¶ 36 The problem with the district court's explanation is that nothing in the record supports its prioritization of a Christmas Eve/Christmas Day split over the parties' requested equal split of the winter break. Neither party's proposed parenting plan mentioned Christmas Eve (or Christmas); both parties (and the parental responsibilities evaluator) proposed an equal division of winter break, without regard to the holiday; and the prior plan

allocated Christmas and Christmas Eve both to one parent, designating December 27 as the halfway point of the break.

¶ 37　It is true that the court was not required to adopt either party's proposed parenting plan.  § 14-10-124(7); *see also Aylor v. Aylor*, 478 P.2d 302, 304 (Colo. 1970) ("Whatever recommendations may be made to the judge, be they by experts or counsel, they are merely [r]ecommendations and nothing more.").  Its obligation was to create a "practical schedule" that served the best interests of the child.  § 14-10-124(7)(b).  But before adopting a winter break parenting time schedule that neither party asked for (and that prevented the child from attending mother's family celebration),[2] it was incumbent on the court to ensure that its stated basis for doing so was grounded in the record.  *See Hatton*, 160 P.3d at 330.

¶ 38　Because there is no basis in the record for the district court's conclusion that "the important part [of winter break] is Christmas

---

[2] Mother first raised the issue of her extended family's biennial Christmas gathering in her motion for her reconsideration.  But given the parties' agreement on an equal split of winter break, she had no reason to anticipate before or at the hearing that a Christmas Eve/Christmas split was on the table.  *See In re Marriage of Herold*, 2021 COA 16, ¶ 7 (holding that no objection is required to preserve an issue when the district court rules sua sponte).

Eve and Christmas Day," and because the court gave no explanation for switching mother's Christmas parenting time from even years to odd years, we reverse the portion of the modified parenting time order concerning winter break. On remand, the district court should determine a winter break parenting schedule that is in the best interests of the child and make findings, based on the record before it, sufficient to explain the basis of the order.

## V.    Disposition

¶ 39    The portions of the order modifying decision-making responsibility over medical matters and the parenting time schedule for winter break are reversed. The case is remanded to the district court for further proceedings, including (1) the entry of an order restoring the joint medical decision-making responsibility established by the prior decree and (2) the entry of a new winter break parenting time schedule. The order is otherwise affirmed.

JUDGE HARRIS and JUDGE JOHNSON concur.

19