**In rè the MARRIAGE OF Peter D. McNAMARA, Appellee,**

and

**Sandra L. McNamara, Appellant.**

No. 97CA1482.

Colorado Court of Appeals, Division IV.

July 23, 1998.

The Law Offices of Steven M. Segall, Steven M. Segall, Andrew D. Haas, Lakewood, Colorado, for Appellee

Litvak Litvak Mehrtens & Epstein, P.C., Ronald D. Litvak, W. Troy Romero, Denver, Colorado, for Appellant

Opinion by Judge ROY.

In this post-dissolution proceeding between Sandra L. McNamara (mother) and Peter D. McNamara (father), mother appeals from the order modifying joint custody of the parties' two minor children to sole custody in father. We affirm in part, reverse in part, and remand with directions.

The parties' marriage was dissolved in 1992. Pursuant to a separation agreement, which was incorporated into the decree, the parties agreed to joint legal and residential custody of the children with an equal sharing of parenting time. No residential parent was designated.

In May 1996, father filed an emergency motion to modify custody based upon certain alleged erratic conduct on the part of mother. After conducting an emergency hearing, the trial court continued joint legal custody but temporarily awarded father sole residential custody of the children. The court also suspended mother's parenting time until she obtained counseling as agreed in a prior stipulation.

Thereafter, both father and mother filed motions seeking sole custody of the children. Prior to a hearing on the motions, the parties entered into a stipulated interim parenting time schedule with the children spending four overnights a week with father and three overnights a week with mother.

After a hearing on the motions, the trial court concluded that it was "in the best interests of the children" to modify the joint custody arrangement and award sole custody to father. The court also designated father as primary residential custodian and continued the previously ordered parenting time schedule.

The trial court further ordered that the guardian ad litem (GAL) could modify the parenting time schedule in the future. Finally, the court ordered the parties to pay their own attorney fees associated with the proceeding.

I.

Mother first contends that the trial court erred by applying the "best interests" standard of § 14–10–131.5, C.R.S.1997, in modifying custody, rather than the endangerment standard set forth in § 14–10–131, C.R.S. 1997. We disagree.

Section 14–10–131.5 provides, in pertinent part, as follows:

(1) Except as provided in subsection (3) of this section, an award of joint custody may be modified or terminated upon motion of one or both parties or on the court's own motion, if such modification or termination is in the best interest of the child, as specified in section 14–10–124(1.5), and the harm likely to be caused by the change in environment is outweighed by the advantage of such change to the child. The court shall also take into consideration the pattern of involvement of the parties with the child.

. . . .

(4) Any order awarding custody of a minor child entered by a court of this state ... may be modified from sole custody to joint

custody at any time pursuant to this section.

■ The change from joint custody with an equal sharing of parenting time without a designation of primary residential parent to sole custody in father would appear to fall within the plain meaning of § 14–10–131.5, and, hence, the best interest standard seems clearly applicable.

However, relying on *In re Marriage of Francis,* 919 P.2d 776 (Colo.1996), mother urges that the endangerment standard should apply here. In *Francis,* the supreme court held that the endangerment standard applied to the change from sole custody in one parent to joint legal custody, with the other parent being designated as the primary residential parent in a joint custody arrangement if a change in the "residence" of the children, in fact, occurred.

There, the mother had been granted sole legal custody of the children at the time of the dissolution decree based on a separation agreement. Upon discovering that mother was planning to move out of state, father moved for a change in custody and for an order prohibiting the move. Mother countered with a motion seeking permission to remove the children. The trial court restrained mother from removing the children from the state, but declined to change custody. The court ordered, however, that should mother leave the state custody would be modified to joint legal custody with father designated as the principal residential custodian.

The supreme court reconciled a tension between the endangerment standard for change in custody set forth in § 14–10–131 (applicable to sole custody) and the best interest standard set forth in § 14–10–131.5 (joint custody with a proviso that sole custody be modified to joint custody using the best interest standard), stating:

> We conclude that the public policy and legislative history underlying the two different standards require courts to focus on the practical impact of a custodial order upon the children, not just the legal consequences. In this case the practical effect of the trial court's orders was to change the children's residential custody from one

parent to the other, contingent upon the happening of a future event: to wit, the mother's move to New York. Therefore, the trial court was required to apply the endangerment standard in evaluating the motions before it.

. . . .

The intent of the legislature in enacting section 14–10–131 [endangerment] of the UDMA was clearly to emphasize the importance of stability in a child's custodial arrangements. The question we face is whether, in later enacting section 14–10–131.5 [best interest], the General Assembly meant to deemphasize the importance of such stability by requiring a lesser standard to modify custody or whether its intent was to distinguish the application of the two standards and allow a harmonious interpretation of the sections.

. . . .

The legislature and the courts have consistently recognized that emotional stability in a child's life is intertwined more closely with the child's residential custody than with legal custody, or, for that matter, with a geographic location. Hence, we conclude that the application of section 14–10–131.5 [best interest] is limited to those situations in which the residential custody of the child will not be changed by the modification, and that section 14–10–131 [endangerment] is the standard to be applied whenever change of primary residential custody is at issue. To hold otherwise would undermine the legislative intent that a child's residential custody arrangements should be stable and final, absent some showing of danger to the child or consent of the custodial parent.

*In re Marriage of Francis, supra,* 919 P.2d at 780–83.

Father relies on *In re Marriage of Wall,* 868 P.2d 387 (Colo.1994), in which the supreme court limited the application of § 14–10–131 (endangerment) to modifications of custody from sole legal custody in one parent to sole legal custody in the other parent and approved the application of § 14–10–131.5(4)

(best interest) to modifications from sole to joint custody.

In *Francis*, however, the supreme court limited *Wall* with respect to the application of § 14–10–131.5 (best interest) to modifications from sole to joint custody when only legal, not residential, custody is at stake. In so doing, the supreme court recognized that the granting of sole legal custody necessarily includes both legal and residential custody. The court also recognized that it was the residential custody which required stability and it was to a modification of residential custody that § 14–10–131 (endangerment) applied.

It is apparent that by "residential custody" the court meant the custody of the residential custodian as contemplated by § 14–10–123.5, C.R.S.1997, when joint custody is awarded. It is likewise apparent that the court contemplated that, as would normally be the case, the child would spend most of his or her time in the residence and presence of the residential custodian when joint legal custody is granted. We conclude that "residential custody," as used by the supreme court did not include "physical custody," "parenting time," or "visitation," which are established and modified in accordance with the best interests of the child by other statutory authority. *See* §§ 14–10–129, 14–10–129.5, 14–10–124, C.R.S.1997.

Here, the parties agreed to, and were granted, joint legal custody and equal physical custody, with no designation of a residential custodian. While the post-decree custody motions were pending, the parties stipulated to a division of physical custody which called for father to have physical custody four days and nights a week and the mother three. Following the hearing, the court granted father sole legal custody status as the "residential custodian," and continued the physical custody most recently stipulated to by the parties.

In our view, the endangerment standard set forth in *Francis* has no application to this case. With respect to a change in custody, *Francis* admonishes us to look at the practical, not legal, effect in determining the standard to be applied. In this instance, while the separation agreement and decree spoke of the best interest of the children in awarding joint legal custody, equal physical custody, and no designation of residential custodian, it amounted to a deferral of the child custody decision.

As a deferral, it left the parents in equal contact with the children in terms of time and granted them equal authority. Therefore, the award of sole legal custody to father with substantially equal access to the children by both parents is, for all practical purposes, an original custody award to which the best interest standard applies. *See* § 14–10–124. In other words, the custodial arrangement initially selected by the parties was as close as possible, practically, to that which existed during the marriage.

In *In re Marriage of Garst*, 955 P.2d 1056 (Colo.App.1998), a removal case in which the parties had joint custody, a division of this court, relying, in part, on *Francis*, concluded that the best interest standard of § 14–10–131.5 applied when the parties equally shared residential custody of the children. The division's rationale was that modification of the joint residential custody arrangements closely resembled the circumstances of an initial custody determination.

Therefore, in our view, the best interest standard of § 14–10–131.5 applies here.

## II.

Mother next contends there was no evidence in the record to support the trial court's modification to sole custody in father. In making this argument, mother relies almost entirely on the fact that the trial court's decision was contrary to the expert opinions expressed during the hearing. We disagree.

Questions of custody rest in the discretion of the trial court, and its ruling will not be disturbed absent an abuse of that discretion. *In re Marriage of Beyer*, 789 P.2d 468 (Colo.App.1989). In custody proceedings, as in other matters, it is the responsibility of the trial court as the trier of fact to determine the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence. *See In re Mar-*

*riage of Chester,* 907 P.2d 726 (Colo.App. 1995).

The trial court was free to reach its own conclusions and was not required to follow the recommendation of the evaluator. *See Aylor v. Aylor,* 173 Colo. 294, 478 P.2d 302 (1970); *In re Marriage of Chester, supra.*

Here, the evidence was undisputed that joint legal custody was no longer feasible. Thus, the trial court was faced with granting one of the parties sole legal custody. The parties presented sharply conflicting evidence concerning their respective parenting abilities and the behavior of the children while staying with each parent. The trial court, as finder of fact, was in a superior position to make credibility determinations regarding the various witnesses and testimony presented. And, there is evidence from lay persons in the record to support the trial court's custody decision. Hence, we perceive no abuse of discretion. *See In re Marriage of Utzinger,* 721 P.2d 703 (Colo.App.1986).

### III.

Mother next contends that the trial court erred in considering the GAL's recommendation because there was no evidence to support that recommendation and because neither party was allowed to cross-examine the GAL. We are not persuaded on either count.

Initially, we simply disagree with mother's assertion that there was no evidence to support the GAL's recommendation. Again, mother's position with respect to a lack of evidence centers on the expert testimony. Much of father's testimony at the hearing directly supports the recommendation of the GAL. Moreover, it is impossible to discern to what extent, if any, the trial court actually relied on or considered the GAL's opinion in reaching its decision.

With regard to the trial court not permitting cross-examination of the GAL, we note that neither party requested to examine or cross-examine the GAL. Hence, there was no error by the trial court. *See People in Interest of J.E.B.,* 854 P.2d 1372 (Colo.App. 1993); *see also* § 14–10–116(2)(b), C.R.S.1997 (effective July 1, 1997, a "special advocate *may be called* to testify as a witness regard-

ing his or her recommendations" (emphasis added)).

### IV.

Mother also contends that the trial court erred in not awarding her a portion of her attorney fees. We conclude that the trial court must reconsider this issue.

Section 14–10–119, C.R.S.1997, permits the trial court to apportion attorney fees and costs in dissolution and post-dissolution matters based upon the relative economic circumstances of the parties. *In re Marriage of Aldrich,* 945 P.2d 1370 (Colo.1997).

Here, there is evidence in the record on which the trial court could properly have based an award of attorney fees to the mother. Mother incurred attorney fees exceeding $9,000, and father earns nearly three times mother's $1,386 monthly total. However, the trial court made no written findings of fact with respect to the attorney fee award. *See In re Marriage of Pilcher,* 628 P.2d 126 (Colo.App.1980). Thus, we have no basis on which to review the ruling.

Accordingly, we conclude the cause must be remanded for reconsideration and entry of findings on mother's request for attorney fees. *See In re Marriage of Pilcher, supra.*

### V.

Finally, mother contends that the trial court erred in granting the GAL discretion to modify parenting time in the future. We agree that this portion of the order should be reversed.

Pursuant to §§ 14–10–129(1) and 14–10–129(2), C.R.S.1997, a parent not granted custody of the child is entitled to reasonable parenting time rights unless *the court* finds, after a hearing, that parenting time would endanger the child's physical health or significantly impair the child's emotional development. Hence, the statutory scheme requires the trial court itself to make decisions regarding parenting time, and it may not delegate this decisional function to third parties. Hence, we conclude that this delegation of

authority to modify parenting time was error. *See In re Marriage of Elmer*, 936 P.2d 617 (Colo.App.1997) (psychiatrist).

We are unpersuaded by father's attempt to distinguish *Elmer* on the grounds that, here, the trial court delegated authority to the GAL rather than a psychiatrist. While the GAL's responsibilities include making recommendations to the trial court, *see In re Marriage of Finer*, 920 P.2d 325 (Colo.App.1996), they do not include making actual parenting time decisions.

The portions of the order granting the GAL authority to modify parenting time in the future and ordering the parties to pay their own attorney fees are reversed, and the cause is remanded for reconsideration of the attorney fee issue. In all other respects, the order is affirmed.

RULAND and CASEBOLT, JJ., concur.