**In re the MARRIAGE OF Constance S. STEVING, Appellee,**

**and**

**Stephen E. BROWN, Appellant.**

**No. 98CA0317.**

Colorado Court of Appeals, Div. I.

April 29, 1999.

In October 1994, after an initial custody evaluation, permanent orders were entered in which mother was granted custody of the child and father was granted reasonable parenting time, consistent with the recommendations of the evaluator. The parties used the services of third parties to establish and monitor parenting time.

In September 1995, father filed motions to prohibit mother from relocating with the child to New York. Thereafter, father also filed a motion to modify custody. Although mother was initially restrained from removing the child from the state, the parties later stipulated, and the trial court ordered, that the child could relocate with mother, subject to final court determination of father's motion to prevent removal. Two additional custody evaluations were conducted, and a guardian ad litem was appointed.

An emergency order, based upon the *ex parte* motion of the guardian ad litem in April 1997, granted temporary placement of the child with father in Colorado. After a hearing approximately two and one-half weeks later, however, the trial court found that there was no danger of irreparable harm and it ordered the child returned to mother's care in New York. A three-day evidentiary hearing concerning father's motions was held in October 1997, and the trial court found that the child's present environment significantly impaired his emotional development and, in the future, would endanger his physical health unless mother genuinely changed her attitude in regard to the child having a relationship with father and unless she discontinued her inappropriate behavior.

The trial court here concluded that, notwithstanding significant impairment to the child's emotional development, the harm likely to be caused by the change of environment from mother to father was not outweighed by the advantages of changing the child's residence. In doing so, the trial court specifically considered the child's age, the impact of an earlier temporary order which had changed custody to father, and the present relationship of the child and his mother. The trial court also found that the child's psychologist should be able to act as a monitor and buffer against the recurrence of inappropriate be-

Lerman & Associates, P.C., Eileen R. Lerman, Justine E. Riant, Denver, Colorado, for Appellee.

Liggett, Smith & Williams, P.C., Michael D. Liggett, Amy K. Rosenberg, Fort Collins, Colorado, for Appellant.

Opinion by Judge TAUBMAN.

Stephen Brown (father) appeals from the order denying his motions to modify custody and to prohibit relocation of the parties' son with Constance Sue Steving (mother). We affirm.

The parties had been married for approximately ten months when the petition for dissolution of marriage was filed. The child was born after the parties had separated.

havior by mother and facilitate expanded parenting time between father and the child.

Additionally, the court ordered that both mother and the child remain in individual therapy and specifically retained jurisdiction over the issue of future expansions of parenting time. In its post-trial order, the trial court also granted father the right to communicate directly with the child's therapist and authorized that psychologist to discuss the child's therapy, progress, and status with both parents.

Accordingly, it entered an order denying father's motion to modify custody and to prohibit relocation.

### I. Modification of Custody and Removal

Father asserts that the trial court abused its discretion in denying his motions to modify custody and to prevent removal of the child to New York because it failed to consider the best interests of the child. More specifically, father contends the trial court erred in allowing mother to retain custody and to relocate to New York despite its express finding that the child's environment with mother significantly impaired his emotional development. We disagree.

■ At the outset, we reject mother's contention that father may not challenge the trial court's denial of his motion to prevent removal of the minor child on the basis that he had stipulated to such removal. As noted, such stipulation and accompanying court order were conditioned on husband's right to continue litigating the propriety of the removal of the minor child to New York.

■ Questions of custody rest in the discretion of the trial court, and its ruling will not be disturbed absent an abuse of that discretion. *In re Marriage of McNamara*, 962 P.2d 330 (Colo.App.1998).

■ It is undisputed in this case that the "endangerment standard" of § 14–10–131(2)(c), C.R.S.1998, applied to resolution of both the removal and custody modification motions. *See In re Marriage of Francis*, 919 P.2d 776 (Colo.1996).

Section 14–10–131(2)(c) was adopted verbatim from the Uniform Marriage and Divorce Act (UMDA). It implements the concept that emotional stability in a child's life is of great significance. To maintain such emotional stability, the General Assembly protected the custodial relationship by making it difficult to modify. *In re Marriage of Francis, supra.*

Under § 14–10–131(2)(c):

The court shall not modify a prior custody decree granting custody to one party unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian established by the prior decree unless:

. . . .

The child's present environment endangers his physical health or significantly impairs his emotional development *and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.* (emphasis added)

Comments to the UMDA explain that modification is to occur under § 14–10–131(2)(c) only if:

the non-custodial parent can prove *both* that the child's present environment is dangerous to [the] physical, mental, moral, or emotional health *and* that the risks of harm from [a] change of environment are outweighed by the advantage of such a change to the child. The last phrase of subsection [ (2)(c) ] is especially important because it compels attention to the real issue in modification cases. Any change in the child's environment may have an adverse effect, even if the non-custodial parent would better serve the child's interest. Subsection [ (2)(c) ] focuses the issue clearly and demands the presentation of evidence relevant to the resolution of that issue.

Uniform Marriage & Divorce Act § 409, 9A *Uniform Laws Annot.* 440 (1998 ed.) (emphasis added).

The *Francis* court used the term "endangerment standard" to refer, *inter alia*, to the alternative statutory provisions of endangerment to a child's physical health or significant impairment to a child's emotional development contained in § 14–10–131(2)(c). We are here concerned only with the trial court's finding of significant impairment to the child's emotional development.

The court in *Francis* recognized that what constitutes endangerment to physical health or significant impairment to emotional development is a highly individualized determination. The *Francis* court also stated that, even if there is no credible evidence of endangerment or significant impairment to emotional health, the non-custodial parent could prevail by showing that the negative impact of the move outweighs the advantages of remaining with the primary caregiver.

However, because the court here found that keeping custody with mother would cause significant impairment to the child's emotional health, this alternative balancing test was not necessary to overcome the presumption of retaining custody with the custodial parent.

Furthermore, *Francis* did not reach the issue presented in this case, *i.e.*, what is the appropriate application of § 14–10–131(2)(c), which requires that to change custody there must be a showing of endangerment to physical health or significant impairment to emotional development *and* a determination that the harm caused by a change in environment is outweighed by the advantage of a change to the child. We conclude that, under § 14–10–131(2)(c) and *Francis*, both prongs of this statute must be established to warrant a change in custody or relocation.

■ The evidence showed that, except for undermining father's relationship with the child, mother was an excellent parent. The child had bonded closely with mother, and she had been the child's only primary caretaker. The evidence also established that separation of a child from the primary caregiver could cause permanent and irreparable harm and serious attachment problems later in life. The recommendation of one expert to ·

remove the child from his primary caretaker was, described by another expert as "draconian," even though it was recognized as an accepted textbook remedy that could be accomplished with certain safeguards. Also, there was evidence that the child exhibited problems after the two-week removal from mother's primary care in April 1997, such as crying, clinging, and stuttering.

The record contains voluminous and conflicting evidence submitted by many experts. It supports the court's consideration of the best interests of the child, as required by the endangerment statute, and the court's conclusion that, even though the child's emotional development was significantly impaired while in mother's custody, the harm of changing the child's residence from mother to father was not outweighed by the advantages of leaving the child with mother. Thus, the court's determination is binding on review.

Father also argues that the only way to prove that the "harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child" is to show that modification of custody would result in more extreme endangerment or impairment to the child. Because the trial court made no findings that the child would be physically endangered or that his emotional development would be significantly impaired if custody were awarded to him, father maintains the trial court erred in denying his motions. However, based upon the plain language of the last phrase of § 14–10–131(2)(c), we reject this reasoning.

II.  Admissibility of Expert's Testimony

Father also contends the trial court erred in admitting the report and testimony of wife's custody expert. We disagree.

■ Here, in denying father's post-trial motion, the trial court stated that it did not grant any weight or credibility to this witness' report or testimony and that other credible and sufficient evidence supported the findings and order.

Even without considering the report or testimony to which father objected, the order denying father's motions to change custody and prohibit mother from remaining out of the state is supported by testimony and the reasonable inferences therefrom. Accordingly, the trial court did not abuse its discretion in admitting, but not crediting, the additional testimony and evidence.

The order is affirmed.

Judge METZGER and Judge CASEBOLT concur.