24CA2191 Marriage of Middleton 12-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2191
El Paso County District Court No. 16DR340
Honorable Amanda J. Phillips, Judge

---

In re the Marriage of

Amy Diane Middleton,

Appellee,

and

Austin Miles Middleton,

Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE GOMEZ
Welling and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

---

The Law Office of Andrew Bryant, LLC, Catherine H. Ford, Colorado Springs, Colorado, for Appellee

Austin Miles Middleton, Pro Se

¶ 1    In this post-dissolution of marriage proceeding involving Austin Miles Middleton (father) and Amy Diane Middleton (mother), father appeals the district court's order modifying parental responsibilities concerning their child. We affirm.

## I.    Background

¶ 2    After nearly three years of marriage and the birth of a son, mother filed a petition for dissolution in 2016. In the permanent orders, the district court approved the parties' stipulations concerning decision-making responsibility and parenting time. Under those stipulations, the parties shared decision-making responsibility, except that mother had the final say regarding religion, and mother was the child's primary residential parent.

¶ 3    In 2020, during proceedings on a motion mother had filed to modify parenting time, a child and family investigator (CFI) credited mother's allegations that father had committed numerous acts of domestic violence during the marriage. Father admitted to the CFI only that he had recently shoved mother and said that he didn't think it was a "big deal." The CFI requested, and the court agreed, that father could receive equal parenting time after completing a

domestic violence evaluation. Father did so. The court didn't modify the allocation of decision-making during those proceedings.

¶ 4 Three years later, mother filed the underlying motion to modify decision-making responsibility and parenting time. The district court held an evidentiary hearing on mother's motion, after which it made the following findings:

- Father committed acts of domestic violence against mother during the marriage.

- Father failed to take any responsibility for his actions, thereby denying the reality of the abuse and its continuing effects on mother and the child. "[T]he underlying problem [was] domestic violence and [f]ather simply being unwilling to relinquish control."

- A supplemental parental responsibilities evaluator (PRE) testified that she observed father's ongoing controlling behavior in the parties' online communications. And mother testified that she still struggled to be in the same room with father.

- The child was "suffering from emotional dysregulation due to the incredibly problematic relationship that [the

parties] have and their inability to get past their dislike for each other."

- The PRE testified that the child's behaviors were consistent with exposure to domestic violence and that the parties "cannot do things cooperatively together," which was causing the child to experience "distress" and was "emotionally endangering his development."

- Despite years of warnings that their behavior was harming the child, the parties had made no meaningful or lasting changes. They were incapable of change; could not encourage the sharing of love, affection, and contact between the child and the other party; and could not place the child's needs above their own.

- Mother objected to joint decision-making responsibility.

¶ 5     The district court determined that the ongoing impact of father's domestic violence made the current joint decision-making responsibility arrangement and equal parenting schedule contrary to the child's best interests and placed the child in danger. The court named mother as the child's sole decision-maker and primary parent and granted father three weekends of parenting time per

month during the school year and equal parenting time during the summer.

¶ 6    Father filed a motion for reconsideration under C.R.C.P. 59, which the district court denied.

¶ 7    On appeal, father contends that the district court erred by modifying decision-making responsibility and parenting time. We address — and reject — each contention in turn.

## II.    Standard of Review

¶ 8    A district court has broad discretion when modifying decision-making responsibility and parenting time, and "we exercise every presumption in favor of upholding its decisions." *In re Marriage of Wenciker*, 2022 COA 74, ¶ 26. A court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner, or when it misapplies the law. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 45.

¶ 9    However, we review the district court's factual findings for clear error, meaning that we will not disturb the findings unless they lack any support in the record. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

### III. Discussion

#### A. Decision-Making Responsibility

¶ 10　Father argues that the district court was aware of his domestic violence by 2020 — three years before mother filed the underlying motion to modify — and, thus, that there are no new circumstances to support a modification of decision-making responsibility under section 14-10-131(2), C.R.S. 2025. We discern no error.

¶ 11　Section 14-10-131(2) allows a district court to modify decision-making responsibility if it finds, based on facts that have arisen since or were unknown to the court at the time of the prior order, that (1) a change has occurred in the circumstances of the child or the party to whom decision-making responsibility was allocated and (2) the modification is necessary to serve the child's best interests. *In re Marriage of Humphries*, 2024 COA 92M, ¶ 17.

¶ 12　When, as here, a party requests a change in decision-making based on endangerment of the child, the district court must retain the existing order unless the order endangers the child's physical health or significantly impairs the child's emotional development and the advantage of a change outweighs the harm likely to result to the child. § 14-10-131(2)(c); *Humphries*, ¶ 20.

¶ 13    Additionally, when a party has committed domestic violence, it is not in the child's best interests to allocate joint decision-making responsibility over the abused party's objection unless the court finds credible evidence of the parties' ability "to make decisions cooperatively in the best interest of the child" and "in a manner that is safe for the abused party and the child." § 14-10-124(1.5)(b), (4)(a)(II)(A), C.R.S. 2025.

¶ 14    Here, in making its decision, the district court didn't rely solely on father's history of domestic violence during the marriage. Instead, the court emphasized new and continuing facts showing that the child was endangered by the lingering effects of father's abuse. *See* § 14-10-131(2). In particular, the court found, with record support, that mother and the child both continued to experience trauma from father's domestic violence; father's coercive control persisted in the parties' interactions; the parties were unable to make decisions cooperatively in the child's best interests; and mother objected to joint decision-making responsibility.

¶ 15    Father also argues that other findings made by the district court and other evidence in the record justify a different outcome. We decline his invitation to reweigh the statutory factors and

evidence in his favor and substitute our judgment for that of the district court. *See Wenciker*, ¶ 26; *see also In re Marriage of Nelson*, 2012 COA 205, ¶ 35 (When reviewing for an abuse of discretion, even where "there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court."); *In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom); *In re Marriage of Collins*, 2023 COA 116M, ¶ 21 (an appellate court may presume that the district court considered all the evidence admitted).

¶ 16     In sum, we cannot say that the district court abused its broad discretion in allocating sole decision-making responsibility to mother. *See Wenciker*, ¶ 26.

## B.     Parenting Time

¶ 17     Father also asserts that the district court erred by substantially modifying parenting time without making adequate findings. Relying on section 14-10-129(2)(d), C.R.S. 2025, and *In re Marriage of Schlundt*, 2021 COA 58, ¶ 35, he argues that the court

was required to make express findings regarding (1) the presumption in favor of retaining the prior parenting time order; (2) whether the child was endangered by the status quo and whether the advantages of the modification outweighed any harm likely caused by the change; and (3) whether the modification was in the child's best interests. We discern no error.

¶ 18     Section 14-10-129(2)(d) and *Schlundt* apply only when a parenting time modification is substantial and results in changing the primary residential parent. *See Schlundt*, ¶ 24. However, the prior order here provided for equal parenting time and, therefore, it didn't designate either party as the primary parent. Thus, the best interests analysis applied, and the court's findings were sufficient. *See In re Marriage of Stewart*, 43 P.3d 740, 742 (Colo. App. 2002) ("[I]n instances where the parties share equal parenting responsibilities, any subsequent modification of that arrangement is governed by the best interests standard."); *In re Marriage of McNamara*, 962 P.2d 330, 331-33 (Colo. App. 1998) (where the parents had equal parenting time, a modification naming one parent as the child's residential parent requires only a best interests showing).

8

¶ 19 Nor are we persuaded by father's related assertion that the modification constituted a restriction under section 14-10-129(1)(b)(I), requiring an endangerment analysis.

¶ 20 Section 14-10-129(1)(b)(I) provides that if a modification restricts a party's parenting time, the district court must find that the existing parenting time order endangers the child's physical health or significantly impairs the child's emotional development.

¶ 21 The modification order at issue is a purely quantitative reduction in father's parenting time and is not a restriction within the meaning of section 14-10-129(1)(b)(I). *See In re Marriage of Dale*, 2025 COA 29, ¶ 32 (*cert. granted in part* July 21, 2025). A restriction occurs only when the court imposes a qualitative limitation, such as requiring supervision, prohibiting overnights, or limiting the location of visits. *Id.* So, contrary to father's argument, an endangerment finding was not required.

¶ 22 In any event, even if the endangerment standard did apply, the district court expressly found, with record support, that the status quo was endangering the child's emotional development and "significant changes" were necessary "to essentially save this child."

¶ 23　According to father, there are other district court findings and evidence in the record that compel a different parenting time determination under the best interests standard. But again, we decline to reweigh the statutory factors in his favor and substitute our judgment for that of the district court. *See Wenciker, ¶ 26; Nelson, ¶ 35; Thorburn, ¶ 49; Collins, ¶ 21.*

¶ 24　Because the district court applied the correct legal standard and the record supports the court's exercise of its broad discretion to name mother the child's primary parent, we see no error. *See Wenciker, ¶ 26.*

¶ 25　Given our disposition, we don't need to resolve mother's claim that father failed to preserve his parenting time assertions. *See In re Marriage of Mack*, 2022 CO 17, ¶ 12 (because a contention was unavailing, the appellate court needn't decide whether it was preserved); *accord Collins, ¶ 48.*

## IV.　Disposition

¶ 26　The order is affirmed.

JUDGE WELLING and JUDGE SULLIVAN concur.