25CA0054 Marriage of Brand 04-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0054
Jackson County District Court No. 20DR30000
Honorable Stephen J. Jouard, Judge

---

In re the Marriage of

Michelle Renee Brand, n/k/a Michelle Renee Brazelton,

Appellee,

and

Joseph Matthew Brand,

Appellant.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Lum and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

---

The Harris Law Firm, PLLP, Katherine O. Ellis, Denver, Colorado, for Appellee

Joseph Matthew Brand, Pro Se

¶ 1    In this post-dissolution of marriage proceeding involving Michelle Renee Brand (mother) and Joseph Matthew Brand (father), father appeals from the district court's order modifying parenting time and child support for the parties' three children.  We affirm the portions of the order retroactively modifying child support and prospectively modifying parenting time.  However, we reverse the portion of the order modifying child support under the new parenting time order.  We remand the case for the district court to recalculate child support based on the new parenting time order and for the court to consider mother's request for appellate attorney fees.

## I.    Background

¶ 2    The parties divorced in 2021, and the district court incorporated their stipulated parenting plan into the decree of dissolution.  At the time, father was living in Walden, whereas mother was living a significant distance away in Aurora.

¶ 3    The parties agreed that during daylight saving time, father would have three overnights of parenting time, Thursday through Sunday, during the first, third, and any fifth weekend of each

1

month.  During standard time, father was allocated two overnights of parenting time Friday through Sunday on the same schedule.

¶ 4     The parties also established a detailed schedule of alternating parenting time for holidays and school breaks and agreed to ten consecutive days of vacation time per party in the summer. Although the children were homeschooled, the parties agreed to use the local school district's calendar to determine school breaks. Lastly, the parties agreed that each party would receive ten consecutive days of "bonus" parenting time with each individual child.

¶ 5     The parties stipulated that father would pay child support of $903 per month.

¶ 6     In September 2023, citing changes in expenses and father's failure to exercise all his allocated parenting time, mother moved to modify child support.  Shortly thereafter, father moved to modify both parenting time and child support based on his recent relocation to Fort Collins.  Mother then also moved to modify parenting time.  The district court appointed a child and family investigator (CFI) to make recommendations as to the parties' competing parenting time requests.

¶ 7     After a hearing, the district court modified parenting time. The court ordered that during the school year, father would have two overnights of parenting time, Sunday through Tuesday, the first, third, and fifth weekend of every month. On Mondays and Tuesdays, father was to be responsible for homeschooling the children.

¶ 8     Father was allocated regular parenting time during summer break, consisting of four overnights, Saturday through Wednesday, on the same schedule. The court left in place the existing holiday parenting time schedule and each party's ten days of vacation during the summer. However, the court reduced the parties' "bonus" parenting time with each individual child to seven days, limited to the summer.

¶ 9     The court increased father's child support obligation to $1,620 per month retroactive to the date of mother's motion to modify parenting time.

¶ 10    Father filed a postjudgment motion arguing that the district court committed multiple errors, but, except for the correction of a typographical error, the court denied father's motion.

## II. Parenting Time

### A. Application of Correct Legal Standard

¶ 11    To start, we reject as unpreserved father's contention that the district court applied the wrong legal standard when modifying parenting time.

¶ 12    Specifically, father argues that the district court erred by applying the best interests of the children standard under section 14-10-129(1)(a)(I), C.R.S. 2025, as opposed to the endangerment standard under section 14-10-129(1)(b)(I), which applies when a court restricts a party's parenting time. According to father, his parenting time was restricted both quantitatively via a reduction in his overnights and qualitatively because his "bonus" overnights were limited to the summer and much of his regular parenting time would involve homeschooling the children.

¶ 13    However, "[i]t is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal." *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18; *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("A party's mere opposition to its adversary's request . . . does not preserve all

potential avenues for relief on appeal. We review only the specific arguments a party pursued before the district court.").

¶ 14　At no point did father argue before the district court that his parenting time was being restricted or that the endangerment standard should apply. Father asserts that his contentions of error are nonetheless preserved because he presented them in his postjudgment motion and he couldn't have known that the court would reduce his parenting time, triggering the endangerment standard. We disagree for two reasons.

¶ 15　First, father was on notice of the parental changes ultimately ordered by the trial court. In the joint trial management certificate (JTMC), mother proposed both the regular parenting time schedule that the court ultimately adopted and proposed the limitation to summer of the parties' "bonus" parenting time. Likewise, father's additions to the JTMC stated that, while it was his preference for mother to continue as the sole provider of the children's homeschooling instruction, he was nevertheless willing to instruct the children on Mondays and Tuesdays.

¶ 16　Given the positions taken by each party in the JTMC, father was plainly on notice of the proposed parenting time schedule that

the district court ultimately implemented, and he had ample opportunity to argue that the endangerment standard should apply to that change.  Yet he didn't do so  *See Melat,* ¶ 18.

¶ 17    Second, "[a]rguments made . . . for the first time in a post-trial motion are too late and, consequently, are deemed waived for purposes of appeal."  *Briargate at Seventeenth Ave. Owners Ass'n v. Nelson,* 2021 COA 78M, ¶ 66.

### B.    Rejection of the CFI's Recommendations

¶ 18    Father next contends that the district court erred by not adopting the CFI's recommendations as to parenting time.  We aren't persuaded.

¶ 19    Section 14-10-116.5, C.R.S. 2025, provides that in an action involving parental responsibilities, the district court may appoint a neutral person to serve the court as a CFI.  *See In re Parental Responsibilities of B.J.,* 242 P.3d 1128, 1133 (Colo. 2010).  The CFI must investigate, report, and make recommendations, considering the best interests factors under section 14-10-124(1.5), C.R.S. 2025.  § 14-10-116.5(2)(a); *B.J.,* 242 P.3d at 1133.

¶ 20    The district court has the discretion to adopt the CFI's recommendations after considering the CFI's report and the

evidence presented at a hearing. *See* § 14-10-116.5(2)(b); *see also B.J.*, 242 P.3d at 1133 ("Ultimately it is the role of the court to weigh the CFI's recommendations pursuant to the appropriate standards to determine whether they are in the children's best interests."). But the court may also disregard the CFI's recommendations and make its own decision based on the evidence. *Aylor v. Aylor*, 478 P.2d 302, 304 (Colo. 1970); *In re Marriage of McNamara*, 962 P.2d 330, 334 (Colo. App. 1998).

¶ 21   A court's discretion over parenting time matters is broad, and we must apply every presumption in favor of upholding the court's decision so long as it is supported by competent evidence in the record. *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007). A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law. *In re Marriage of Evans*, 2021 COA 141, ¶ 25.

¶ 22   Based on her analysis of the children's best interests, the CFI recommended that, during the school year, the children should have regular parenting time with father Sunday through Tuesday every weekend except for the second weekend each month. The CFI also recommended that, long term, the children shouldn't do their

homeschooling during father's parenting time and, instead, the children should do a nontraditional schooling schedule, with some of their homeschooling occurring with mother on Saturday. The CFI also recommended that, during the summer, father should have parenting time Saturday through Wednesday for all but one weekend per month. Lastly, the CFI suggested that the parties' holiday and "bonus" parenting time remain unchanged.

¶ 23 While the district court found the CFI's recommendations to be "generally supported," the court made its own detailed findings concerning the children's best interests and then awarded father the same regular parenting time recommended by the CFI, except for only the first, third, and fifth weekends of each month. The court also required father to homeschool the children during the school year.

¶ 24 We don't see any abuse of the district court's discretion because the court was free to give whatever weight to the CFI's recommendations that it saw fit. *B.J.,* 242 P.3d at 1133; *McNamara,* 962 P.2d at 334; *see also In re Marriage of Lewis,* 66 P.3d 204, 207 (Colo. App. 2003) ("[C]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well

8

as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the trial court."); *In re Marriage of Farr*, 228 P.3d 267, 270 (Colo. App. 2010) (the district court's resolution of conflicting evidence is binding on review).

¶ 25 Importantly, mother testified at length as to why her proposed parenting time schedule, which the district court ultimately implemented, was in the children's best interests. And given this record support, we decline to disturb the district court's determinations and otherwise reweigh the evidence in father's favor. *See People in Interest of A.J.L.*, 243 P.3d 244, 249-56 (Colo. 2010) (reversing because the court of appeals "improperly substituted its judgment for that of the trial court regarding the credibility of witnesses and the weight, sufficiency, and probative value of the evidence").

### III. Modification of Child Support

¶ 26 Father next asserts that the district court committed multiple errors when modifying child support. Because we agree, we reverse in part the portion of the order modifying child support.

A. Standards of Review and Applicable Law

¶ 27 We review a child support order for an abuse of discretion. *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011). But we review de novo whether the district court applied the correct legal standard when calculating child support, *In re Marriage of Wells*, 252 P.3d 1212, 1213 (Colo. App. 2011), and we won't disturb the district court's factual findings if they have record support, *In re Marriage of Tooker*, 2019 COA 83, ¶ 27.

B. Determination of Overnights and Use of Worksheet A

¶ 28 Under section 14-10-115(3)(h), C.R.S. 2025, "[s]hared physical care" means that each parent has the children "for more than ninety-two overnights each year" and that both parents contribute to the children's expenses in addition to paying child support. *See In re Marriage of Antuna*, 8 P.3d 589, 596 (Colo. App. 2000). When the parties share physical care, an adjustment is made to the basic support obligation because certain basic expenses for the children will be incurred by both parents. *Id.*; § 14-10-115(8)(b). To account for this adjustment, worksheet B, rather than worksheet A, is used to calculate child support when shared physical care exists. Worksheet A is used when one parent is the primary residential

parent such that the other parent has ninety-two or fewer overnight visits with the children each year. *See Antuna*, 8 P.3d at 596.

C. Modification of Child Support Under New Parenting Time Order

¶ 29 We first address father's contention that he will have more than ninety-two overnights under the new parenting time order, and therefore the district court erred by using Worksheet A when modifying child support. Because the district court made insufficient findings in support of its use of Worksheet A, we reverse the portion of the district court's order modifying child support under the new parenting time order and remand the case for further proceedings.

¶ 30 A district court must make findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order. *See* C.R.C.P. 52; *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9; *In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008).

¶ 31 When modifying child support, the district court initially explained that it had "attempted to calculate" the overnights allocated to father under the new parenting time order and then

11

found that father had been allocated not more than ninety-two overnights. Yet the court didn't make any specific findings as to the number of overnights that father would be exercising, nor did it provide any indication as to how it had determined the number of father's overnights.

¶ 32 Later, in its order denying father's postjudgment motion, the district court contradicted its prior findings and provided a different justification for using Worksheet A, explaining that, under the new parenting time order, father would be exercising less than ninety-two overnights per year because of his past failure to exercise a significant portion of his allocated parenting time. Yet, given the district court's inconsistent and conclusory explanations as to how it determined that the use of Worksheet A was appropriate, we lack a clear understanding of the court's order, *see Gibbs*, ¶ 9, and accordingly reverse the portion of the court's order modifying child support under the new parenting time order.

¶ 33 In defense of the district court's ruling, mother cites her testimony that father had historically failed to exercise significant portions of his parenting time. And indeed, the district court appeared to rely on mother's testimony when it put forth a new

rationale for using Worksheet A in its denial of father's postjudgment motion. However, it was undisputed that father had relocated from Walden to Fort Collins, which was closer to mother and had significantly reduced the commute between the parties' residences. Moreover, father's relocation eliminated the substantial mountain driving that characterized the parties' prior parenting time exchanges. Given this consequential change in father's location, we conclude that it was arbitrary for the district court to rely on his past parenting time when determining the number of overnights father would exercise under the new parenting time order. *See Evans*, ¶ 25.

¶ 34    Therefore, on remand, the district court must determine father's number of overnights under the new parenting time order, and the court must accordingly use that number to determine father's child support obligation under the provisions of section 14-10-115. On remand, the court must consider the parties' current financial circumstances when redetermining child support. *See In re Marriage of Schaefer*, 2022 COA 112, ¶ 41. The court should make sufficient findings to give us a clear understanding of the

basis of its order, including findings as to how the court determined the number of father's overnights. *Gibbs*, ¶ 9.

### D. Retroactive Child Support

¶ 35    While we reverse the portion of the court's order modifying child support going forward, we affirm the portion of the district court's order modifying child support retroactive to the date that mother filed her January 31, 2024, motion to modify parenting time.

¶ 36    Given mother's testimony that father had failed to exercise significant portions of his parenting time under the prior parenting time order, we conclude that the district court could retroactively modify child support under that prior order based on the parenting time that father had actually exercised. *Cf. Brown v. Brown,* 516 P.2d 1129, 1131 (Colo. 1973) (recognizing that the parent was "only entitled to payments when the children were actually with her and supported by her").

¶ 37    And while father argues that the district court abused its discretion by entering any order retroactively modifying child support, we disagree because any error was invited by father.

¶ 38    In the JTMC, father specifically argued that, based on his proposed parenting time schedule, his child support obligation would be reduced by more than ten percent, thus warranting modification.  Yet, even though his request to modify child support was based on a proposed change in future parenting time, father nevertheless asked that child support be modified retroactive to the date of mother's September 2023 motion to modify child support.

¶ 39    Father now argues that the district court erred by modifying child support retroactively because the portion of the district court's order modifying parenting time only applied going forward.  **(OB p. 29)**  But given the contrary position that he took in the JTMC, we hold that father's contentions are barred by the doctrine of invited error.  *See In re Marriage of O'Connor*, 2023 COA 35, ¶ 24 (recognizing that "[t]he doctrine of invited error precludes a party from appealing an error that the party invited or injected into the case"); *cf. Horton v. Suthers*, 43 P.3d 611, 619 n.10 (Colo. 2002) (invited error merely mandates that the claim of error cannot be considered but does not suggest that actual error occurred).

## E. Maintenance Multiplier

¶ 40 Because the issue may arise on remand depending on the parties' current financial circumstances, we next address father's contention that the district court miscalculated the adjusted maintenance figure that was to be deducted from his gross income and added to mother's gross income when calculating his child support obligation. We agree with father that the court erred.

¶ 41 Under section 14-10-115(3)(a)(II)(A), (B), when the maintenance actually paid by a parent isn't deductible for federal income tax purposes, then the amount of maintenance deducted from that parent's gross income is multiplied by 1.25 if the parties' combined monthly adjusted gross income is ten thousand dollars or less; it is multiplied by 1.33 if the parties' combined monthly adjusted gross income exceeds ten thousand dollars. And under section 14-10-115(5)(a)(I.5), the maintenance received by the recipient parent is likewise adjusted using the same multipliers.

¶ 42 The parties' combined gross incomes exceeded $14,000 per month, requiring the application of the 1.33 multiplier to the $1,309 in monthly maintenance paid by father, which should have resulted in a maintenance adjustment of $1,741 on each side of the

16

child support worksheet. *See* § 14-10-115(3)(a)(II)(B), (5)(a)(I.5). Yet, the district court incorrectly multiplied the $1,309 per month in maintenance by 1.25, resulting in a maintenance adjustment of only $1,636.

¶ 43    Accordingly, when reconsidering child support based on the parties' present circumstances, the district court must ensure on remand that it applies the correct multiplier.

## IV.    Appellate Attorney Fees

¶ 44    Asserting that father's appeal is frivolous, mother requests an award of her attorney fees incurred on appeal. *See* § 13-17-102, C.R.S. 2025. We don't view his appeal as frivolous such that an award of appellate attorney fees is appropriate, and we therefore deny mother's request.

¶ 45    Mother also requests her appellate attorney fees under section 14-10-119, C.R.S. 2025, due to the alleged financial disparities between the parties. Because the district court is better situated to determine the factual issues regarding the parties' current financial resources, we direct it to address this request on remand. *See* C.A.R. 39.1; *In re Marriage of Schlundt*, 2021 COA 58, ¶ 54.

## V.    Disposition

¶ 46    The portions of the order retroactively modifying child support and prospectively modifying parenting time are affirmed.  The portion of the order modifying child support under the new parenting time order is reversed.  The case is remanded for the district court to (1) recalculate child support under the new parenting time order consistent with this opinion, and (2) address mother's request for appellate attorney fees.  Those portions of the order not challenged on appeal remain undisturbed.

JUDGE LUM and JUDGE MEIRINK concur.